In re MELTING MOMENTS, INC.,
d/b/a The Palace.

MELTING MOMENTS, INC., d/b/a/ The
Palace, Plaintiff,

v.

HELMSLEY HOTELS, INC., The Palace
Company, New York Palace, Inc. and
457 Madison Corp., Defendants.

Bankruptcy No. 79 B 10331.
Adv. No. 80–5295–A.

United States Bankruptcy Court,
S. D. New York.

June 17, 1982.

Sherman & Citron, P. C., New York City,
for plaintiff.

Wien, Lane & Malkin, New York City, for
defendants Helmsley Hotels, Inc. and The
Palace Co.

## DECISION ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

EDWARD J. RYAN, Bankruptcy Judge.

An action was brought by plaintiff-debtor, Melting Moments, Inc., d/b/a The Pal-

ace, a restaurant, against defendants Helmsley Hotels, Inc., The Palace Company, New York Palace, Inc., and 457 Madison Avenue Corp., alleging trademark infringement and unfair competition. The defendants moved to dismiss the action for failure to state a claim upon which relief can be granted and to recover reasonable attorneys' fees and expenses. Plaintiff limited its opposition to that portion of defendants' motion seeking attorneys' fees and expenses incurred in defense of this aborted action.

In 1975, the Department of State of the State of New York issued a Certificate of Registration of Service Mark to the plaintiff. The mark contained the words "The Palace", in gothic script, which constituted the plaintiff's name and logo. The plaintiff has been continuously using the mark since March 1975.

In 1974, Harry B. Helmsley, one of the principals of the defendants, filed with the New York Department of State a petition for registration for a hotel name "The Palace." The registration was renewed each year until 1978 when the defendants began using the name on construction signs at the construction site of defendants' new hotel. The hotel's logo of "The Palace" was also in gothic script.

Plaintiff's counsel wrote a letter to the defendants' attorneys stating that the plaintiff objected to the defendants' use of the name and insignia. Further correspondence occurred between the parties for approximately one year. The plaintiff attempted to persuade the defendants to change the hotel's name and logo and to cease using the name and logo in dispute. The plaintiff claimed that the defendants' use of the logo was causing confusion between the establishments since both establishments were in Midtown Manhattan and both attempted to attract the same type of clientele. Although counsel for the defendant notified plaintiff's counsel that the name chosen for the hotel was "The Helmsley Palace", the defendants continued advertising the hotel as "The Palace."

In December 1979, plaintiff commenced a Chapter 11 proceeding and decided not to bring suit against defendants until it was determined that the plaintiff would survive as a viable business entity. The plaintiff claims that during the same period it received numerous inquiries regarding the defendants' hotel, indicating that defendants' use of the name "The Palace" was causing confusion between the two entities. On August 29, 1980, the plaintiff filed a summons and complaint and on September 18, 1980, it filed an amended summons and complaint for the sole purpose of correcting one of the defendants' names.

The defendants claim that after receiving a letter from the plaintiff's attorneys dated December 19, 1979, until service of the summons and complaint, there was no communication between the two parties. Hence, the defendants believed that plaintiff was satisfied with defendants' choice of "The Helmsley Palace" as the hotel's name. Upon receipt of the summons and complaint, the defendants attempted to persuade plaintiff to withdraw the suit since the word "Helmsley", which was included in the hotel's name, would clearly distinguish the two establishments.

Following the initiation of the Chapter 11 proceedings, Joseph Vogel and Stuart Spitz began financing the plaintiff's arrangements with its creditors. Vogel and Spitz subsequently became the plaintiff's new principals and, upon assuming control, made a business decision to discontinue this action. They claimed that they did not want to start a new business venture where that business was involved in potentially costly and time-consuming litigation.

The defendants claim that they had continually asked the plaintiff to withdraw the suit to avoid expenditure of considerable time and money on a lawsuit which defendants believed had no valid legal basis. Defendants state it was only after they had expended considerable time and effort preparing and submitting papers in support of their motion that plaintiff consented to dismiss the action.

It is the defendants' contention that the suit was wholly without merit, frivolous and was brought for the sole purpose of burdening and oppressing the defendants. Therefore, the defendants believe that they are entitled to reasonable attorneys' fees and expenses incurred in defense of this action.

Conversely, the plaintiff believes that there was a valid action for wrongful misappropriation of its name and logo "The Palace"; that discontinuance of the suit was based on a business judgment, not a determination that the suit lacked merit, and; therefore, the plaintiff argues that the defendants are not entitled to their attorneys' fees and expenses.

By reason of the plaintiff's consent to dismiss this action, the defendants' motion to dismiss the amended complaint was granted, with prejudice on the merits.

■ The sole issue now before this court is whether the plaintiff acted in good faith regarding the initiation and prosecution of this action so as to deny defendants' motion for costs. It is the opinion of this court that the plaintiff introduced sufficient evidence, at the trial held on October 6 and 26, 1981, to warrant its inquiry into a possible trademark infringement and its subsequent initiation of litigation. Therefore, since the plaintiff acted in good faith, the defendants' motion for costs is denied.

■ The issue of who is to bear the burden of counsel fees is governed by the American Rule. According to the American Rule each party to an action will normally bear its own attorneys' fees. However, a judicial exception to the rule shifts the burden of costs where an action has been initiated or conducted in "bad faith, vexatiously, wantonly or for oppressive reasons." *F. D. Rich Co. v. United States ex rel. Industrial Lumber Company*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). A claim is not made in bad faith when it is colorable, *i.e.*, the claim has

"some legal and factual support, considered in light of the reasonable belief of the individual making the claim". *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980).

The standard is "whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually had *been established.*" *Id.* In the instant case the principal of the plaintiff firmly and reasonably believed that damage was being done to his establishment's tradename rights and therefore wanted to be compensated for what he considered to be a wrongful act.

■ The plaintiff's attorneys showed that they had reason to believe that the plaintiff had at least a colorable claim. Testimony and evidence was introduced during the trial demonstrating that the plaintiff's attorneys did confer with trademark specialists who advised them that plaintiff had a viable claim. Additionally, the exhibits introduced at the trial were sufficient for a reasonable attorney to conclude that the facts supporting the claim might be established, which is the standard suggested by the court in *Nemeroff.* There is no justification to classify plaintiff's case as either frivolous, vexatious, wanton, or as having been brought in bad faith or for oppressive reasons.

The defendants' motion to recover their reasonable attorneys' fees and expenses incurred in defense of this action is denied.

Settle an appropriate order.