**In re ISLAND CLUB MARINA, LTD., Plaintiff,**

v.

**LEE COUNTY, FLORIDA, Defendant.**

**Bankruptcy Nos. 82 B 9256, 83 A 0481.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 17, 1983.

Jeffrey Weston, Chicago, Ill., for plaintiff.

Mary Schulz, Roan & Grossman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action concerns a motion to dismiss a complaint seeking declaratory relief. Specifically, the movant, Lee County, a political subdivision of the state of Florida (hereinafter referred to as "Lee County"), seeks to dismiss a declaratory relief action brought by Island Club Marina (hereinafter referred to as debtor).

Lee County's motion for dismissal is based on a two-pronged jurisdictional attack on this court's authority to hear mat-

ters involving questions of state law. First, Lee County contends that *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) strips bankruptcy courts from hearing issues involving state related claims. Second, Lee County contends that even if *Marathon* did not strip this court of jurisdiction over state related claims, the doctrine of exhaustion of administrative remedies (primary jurisdiction doctrine) does. The second prong of Lee County's argument contends that the debtor must first exhaust its rights in relevant administrative proceedings prior to seeking declaratory relief from a bankruptcy court. Prior to reaching the questions of law presented in this case, a recitation of the relevant facts is appropriate.

The debtor is an Illinois limited partnership registered in Cook County, Illinois. It was formed by two general partners, both residents of Illinois, for the purpose of building a condominium complex on property located in Fort Meyers, Florida. In addition to the proposed condominiums, a restaurant and marina were also to be constructed on this Florida property.

The debtor secured a permit from Lee County on April 8, 1981 which enabled it to begin construction of the proposed condominium complex. In reliance on the permit, the debtor incurred substantial construction costs.[1] The planned complex, when completed, was to consist of four buildings housing 75 condominium units. The foundations for the four buildings were completed and approved by building inspectors from Lee County on January 8, 1982.

Subsequently, the debtor encountered financial difficulties. Eventually, on July 16, 1982, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The debtor's proposed plan of reorganization anticipates a 100% dividend to all scheduled creditors. The success of the plan hinges on the debtor's efforts to obtain a construction loan enabling it to complete the condominium complex.

The possession of a valid building permit is one condition precedent required by construction lenders prior to making a loan commitment. Pursuant to this, the debtor wrote Lee County in December of 1982 seeking confirmation of its building permit. The debtor did not receive a written response. Instead, approximately three months later, the debtor was orally informed by a representative from Lee County that the building permit was no longer considered valid.

The debtor then initiated this adversary proceeding. The debtor's complaint seeks declaratory relief, essentially asking that this court grant it the right to build the complex in accordance with the existing building permit. Lee County responded by bringing a motion to withdraw reference of this proceeding pursuant to paragraph (C)(2) of the General Order dated December 20, 1982. In addition, Lee County filed a motion to dismiss the complaint based on the aforementioned jurisdictional defects.

On June 10, 1983, Chief District Judge Frank McGarr denied Lee County's petition to withdraw reference from this court. Judge McGarr further stated that the General Order dated December 20, 1982, was a valid exercise of the District Court's constitutional powers. Concluding, Judge McGarr stated that this proceeding was one properly subject to the bankruptcy court's jurisdiction. However, once again, Lee County collaterally raises the issue of jurisdiction in its petition for dismissal before this court. Thus, this court must first address the *Marathon* related argument before reaching the question of jurisdiction.

The *Marathon* opinion has been subject to many different interpretations. Thus, in deciding what jurisdiction a bankruptcy court has in the area of state related claims, this court is constrained to follow the rules promulgated by the Seventh Circuit. The

---

1. The debtor alleges that it actually expended in excess of $1,000,000.00 in construction costs to this date and alleges that it has become liable for additional amounts in excess of $2,000,000.00.

Judicial Council for the Seventh Circuit ordered the District Courts of this Circuit to adopt a rule substantially similar to that proposed on September 27, 1982 by the Judicial Conference of the United States.

■ The District Court for the Northern District of Illinois responded by adopting the aforesaid General Order dated December 20, 1982. The General Order prescribes the jurisdiction that a bankruptcy court can validly exercise in various instances. The constitutionality of the General Order was upheld in two subsequent decisions by courts in the Northern District of Illinois. *See Cherry Creek Hanover, Inc. v. Hooper,* 567 F.Supp. 1011 (N.D.Ill., 1983); *See also In re Lear Colorprint,* 29 B.R. 438 (Bkrtcy. N.D.Ill., 1983), (*Marathon* decision left unaffected statutory section providing that district courts have original jurisdiction over all matters and proceedings in bankruptcy. This jurisdictional authority includes subject matter jurisdiction over state law claims relating to the bankrupt); *Accord First National Bank of Tekamah, Neb. v. Hansen,* 702 F.2d 728 (8th Cir., 1983), cert. den —— U.S. ——, 103 S.Ct. 3539, 77 L.Ed.2d —— (1983); *In re Braniff Airways, Inc.,* 700 F.2d 214 (5th Cir.1983), cert. den. sub. nom. American Airlines, Inc. v. Braniff Airways, Inc., —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir. 1983). Consequently, based on prior case law and the minute order of Judge McGarr dated June 10, 1983, this court must conclude that it has jurisdiction over the instant proceeding. Consistent with this conclusion is the further result that Lee County's motion to dismiss on *Marathon* related grounds is denied.

■ The final issue raised by Lee County involves the doctrine of primary jurisdiction. Under the primary jurisdiction doctrine, a litigant must first exhaust all available administrative remedies prior to seeking relief from a federal court. Consistent with this principle, Lee County contends that the debtor's first course of review in the instant proceeding should have been from the agent's response to the Board of Adjustments for Lee County, Florida.[2] Moreover, in that there are strong state interests present in zoning and building permit issues, it is argued that this bankruptcy court should abstain from hearing this complaint pending a resolution by either a Florida state court or administrative agency.

■ Generally, the bankruptcy court should stay its hand pending a decision by an administrative body. *Nathanson v. Labor Board,* 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). The rationale for this doctrine of primary jurisdiction is that agencies with special expertise should have the initial opportunity to develop and administer policies relevant to their jurisdiction, *ICC v. All-American, Inc.,* 505 F.2d 1360, 1362 (7th Cir.1974). Lee County cites only the case of *Adams v. City of Chicago,* 491 F.Supp. 1257, 1259 (N.D.Ill.,1980) to support its contention that the debtor is not entitled to judicial relief until the relevant administrative remedies have been exhausted.

■ This court finds *Adams* to be factually distinguishable from the present situation. *Adams* dealt with an employment dispute involving the City of Chicago. Thus, the primary emphasis in *Adams* was on labor law and not issues involving matters of bankruptcy law. Furthermore, the holding in *Adams* was distinguished in two subsequent decisions rendered by courts located in the same circuit. *See United Church of the Medical Center v. Medical Center Commission,* 689 F.2d 693, 697 (7th Cir.,1982) (exhaustion of state administra-

---

2. Under the applicable Florida law, a "person" can seek review of a permit decision through the local county board of adjustment. A decision by the board of adjustment can be appealed to the local board of county commissioners. Thereafter the route of appeal lies through the circuit court system of Florida. Thus this court notes that were the debtor to proceed on the instant issue through the administrative route set in the state of Florida, immeasurable time that could be used for locating lenders would be lost. *See* Fla.Stat. §§ 163.220 *et seq.* (Supp. VIII 1983).

tive remedies was not prerequisite to bringing a 1983 action); *See also Kaufman v. Board of Trustees, Community College No. 508,* 522 F.Supp. 90, 94 (N.D.Ill.1981) (exhaustion of state administrative remedies is not required where administrative remedy is inadequate). Consequently, this court is of the opinion that issues involving primary jurisdiction questions can only be determined on a case by case basis.

In that this case is related to a bankruptcy proceeding, important federal interests are involved. In addition, since the building permit was valid at the time of the bankruptcy petition, it becomes an asset of the debtor's estate pursuant to 11 U.S.C. § 541 (Supp. V, 1981). *See United States v. Whiting Pool Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). (The Supreme Court broadly defines what constitutes property of the "estate" under Section 541).

As property of the debtor's estate, the debtor's interest in the building permit is entitled the protections granted by the Bankruptcy Code under 11 U.S.C. § 362 (Supp. V. 1981). Section 362 provides in relevant part that:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, application to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title
>
> \*  \*  \*  \*  \*  \*
>
> (3) any act to obtain possession of property of the estate or of property from the estate;

11 U.S.C. § 362 (Supp. V 1981).

In an effort to avoid the provisions of the Bankruptcy Code, Lee County contends that it has not formally prohibited the debtor from completing the complex. It is argued that this conduct prevents this proceeding from reaching a requisite point of justiciability.

This court disagrees with Lee County for two reasons. First, the record indicates that Lee County has yet to provide the debtor with a written confirmation that a valid building permit exists. In fact, the record indicates that a representative from Lee County orally informed the debtor that its permit is no longer considered valid. Second, the fact that Lee County has let this proceeding advance to this stage reflects the resistance the debtor has faced from Lee County in its efforts to reorganize. Viewing all factors as a whole, this court finds that Lee County's actions with respect to the building permit present a justiciable issue as to whether the stay provisions of Section 362 have been violated.

The automatic stay is one of the primary protections afforded to the debtor under the provisions of the Bankruptcy Code. When certain government regulatory proceedings threaten assets of the debtor's estate, the court can impose a stay. *Matter of Shippers Interstate Service, Inc.,* 618 F.2d 9, 13 (7th Cir.,1980). However, Section 362 does provide certain limited exceptions to its generally broad language. The applicable exception in this case is Section 362(b)(4) which states in relevant part that:

> (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay— . . .
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
>
> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; . . .

11 U.S.C. § 362(b)(4) (Supp. V. 1981).

The legislative history concerning Section 362(b)(4) indicates that:

This Section is intended to be given a narrow construction in order to permit governmental units to pursue to protect the health and safety and not to apply to actions by a governmental unit to protect the pecuniary interest in property of the debtor or property of the estate.

124 Congressional Record H11089, 5 U.S. Code Congressional & Administrative News 5787, 6513 (December 1978).

See State of Missouri v. U.S. Bankruptcy Court for the Eastern District of Arkansas, 647 F.2d 768, 776 (8th Cir.1981) (the term "regulatory or police powers" refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property); See also Matter of Penn Terra, Ltd., 24 B.R. 427, 432 (Bkrtcy.W.D.Pa.1982), citing In re Sampson, 17 B.R. 528, 530 (Bkrtcy.D.Conn.1982) ("If the focus of the police power is directed at the debtor's financial obligations rather than health and safety concerns, the stay is applicable.").

█ In the case at bar, Lee County attempted to withdraw a building permit that was granted at a prior hearing. This action was taken without first seeking permission from this court to lift the automatic stay. Nor does the record show that Lee County was acting within its prescribed police or regulatory powers in acting to impair the debtor's rights to the building permit. Consequently, this court finds that Lee County is in violation of Section 362.

█ Notwithstanding this conclusion, this court must still resolve the issue of exhaustion of administrative remedies. For it very well may be, that despite the automatic stay provisions of Section 362, this court might deem it advisable to let the administrative review board of Lee County handle this portion of the proceeding. In making such a determination, the key factors for this court to consider is the impact which the challenged proceeding has upon the efficient, convenient and fair administration of this estate. See In re Jacksen, 25 B.R. 587 (Bkrtcy.D.Conn.,1982). (The factors used by the Jackson court in reaching a

determination as to whether abstention was advisable are similarly applicable to cases involving the question of primary jurisdiction.) See also International House of Pancakes v. American Druggists Insurance Co., 22 B.R. 926 (Bkrtcy.N.D.Ill.,1982) (factors used to determine whether abstention is warranted revolves around the issue of what route would best assure an economical and expeditious administration of the estate.)

A review of the pertinent case law indicates many instances where a bankruptcy court has intervened to stay a proceeding instituted by a government unit without requiring complete exhaustion of administrative remedies. See Matter of Townview Nursing Home, 28 B.R. 431 (Bkrtcy.S.D.N.Y.,1983) (court did not apply doctrine of primary jurisdiction to refrain from reaching merits of medicaid reimbursement due debtor even though state had established administrative review board); Matter of Penn Terra Ltd., 24 B.R. 427 (Bkrtcy.W.D. Pa.,1982) (court held that state action instituted subsequent to the filing of the petition by a state environmental agency seeking to compel the debtor to comply with certain regulations as violative of Section 362); Matter of IDH Realty, 16 B.R. 55 (Bkrtcy.E.D.N.Y.,1981) (municipality cannot enforce zoning provision in face of the automatic stay unless violation of local law existed at the time of filing); In re King Hospital, Inc., 4 B.R. 704 (Bkrtcy.S.D. Fla.,1980) (determination by state board rehabilitation agency that the debtor hospital had forfeited its exemption from a certificate of need review was subject to automatic stay. This conclusion was reached because the state board failed to prove that protection of public health or welfare was at stake.

█ The instant case reflects a situation which is not conceptually different from the cases cited above. The building permit was granted by the Lee County board after a full hearing. Nonetheless, after the debtor filed its bankruptcy petition, Lee County has attempted to withdraw the building permit without seeking permission from this court to lift the stay. The existence of a valid building permit to this estate will

most likely spell the difference between either a successful reorganization or a forced liquidation. Consequently, this court concludes that the administration of this estate would best be served by retaining this proceeding in the bankruptcy court.

The conclusion that this court will not require the debtor to exhaust any administrative remedies that may be provided under Florida law is consistent with prior case law and the legislative history of Section 362. Furthermore, the exigencies of this situation coupled with what would be the most efficient and expeditious manner for handling this estate require this court to enjoin Lee County from further conduct designed to impair the debtor's rights to the building permit. This order is of course subject to a showing by Lee County that any future action it may take falls within either its police or regulatory powers as prescribed under the exception provisions of Section 362. This court's conclusion that Lee County violated the stay provisions of section 362 necessarily means that Lee County's motion for dismissal is denied.

The debtor is to furnish a draft order in accordance with this opinion within five (5) days.