**In re ISLAND CLUB MARINA, LTD., an Illinois Limited Partnership, Debtor.**

**ISLAND CLUB MARINA, LTD., an Illinois Limited Partnership, Plaintiff,**

**v.**

**LEE COUNTY, a Political Subdivision of the State of Florida, Defendant.**

**Bankruptcy No. 82 B 09256.**

**Adv. No. 83 A 0481.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 27, 1984.

Jeffrey Weston, Friedman, Westeron, Strenberg & Rakich, Chicago, Ill., for plaintiff.

John T. McEnroe, Keck, Mahin & Cate, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

This controversy involves an action seeking declaratory relief. Specifically, Island Club Marina, Ltd. ("debtor"), requests a finding by this court upholding the validity of certain building permits that were issued to it. The defendant, Lee County, contends that the original building permits that were issued to the debtor are no longer valid. Certain other issues of law are raised, but they will be addressed after a brief review of the stipulated facts.

The debtor is an Illinois limited partnership registered in Cook County, Illinois. It was formed by two general partners, both residents of Illinois, for the purpose of building a condominium complex on property that was purchased in 1980 and located in Fort Meyers, Florida. In addition to the proposed condominiums, a restaurant and marina were also to be constructed on this Florida property.

The Fort Meyers property had been zoned for a 100-unit apartment complex since 1976. Despite this, the debtor's site-plans for the development of a 75-unit complex were initially rejected by Lee County's Planning Department. The alleged basis for the initial rejection was predicated on the conclusion that the local density ordinances prohibited the construction of such a complex on the property in question. Subsequently, the debtor appealed to the Board of Commissioners for the County. The Board then approved the plans subject to the granting of two easements, which the debtor granted.

The existing structures on the property were demolished in late 1980 in contemplation of the construction of the proposed complex. Building permits were secured from Lee County on April 8, 1981,[1] which enabled the debtor to begin construction. Additionally, the condominium documents were approved by the Department of Business Regulations for the State of Florida. In reliance on the permit, the debtor incurred substantial construction costs.[2] The planned complex consists of four buildings. The foundations for the four buildings were completed and approved by building inspectors from Lee County on January 8, 1982.

Subsequently, the debtor encountered financial difficulties. Eventually, on July 16, 1982, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The debtor's proposed plan of reorganization anticipates a 100% dividend to all scheduled creditors. The success of the plan hinges on the debtor's efforts to obtain a construction loan enabling it to complete the condominium complex.

The possession of a valid building permit is one condition precedent required by construction lenders prior to making a loan commitment. Pursuant to this, the debtor wrote Lee County in December of 1982 seeking confirmation of its building permit. The debtor did not receive a written response. Eventually, the debtor's general partner was orally informed at a meeting with a building official and attorney from Lee County, that the building permit was no longer considered valid. The Lee County officials expressed concern over the debtor's financial condition. Additionally, the officials indicated that the permits were considered to be invalid due to the debtor's failure to schedule building inspections at six-month intervals.

The Lee County officials did, however, request additional information concerning the project in an alleged effort to reconcile the building permit issue. The debtor

1. The permits were issued pursuant to the provisions of the Southern Building Code Congress International, Inc., 1979 ed. with 1980 and 1981 amendments (hereinafter "Building Code"). Lee County enacted an amendment to § 106.3 of this Code in May of 1982.

2. The debtor alleges that it actually expended in excess of $1 million in construction costs to this date and alleges that it has become liable for additional amounts in excess of $2 million.

promptly submitted information relating to the progress of the construction. Nonetheless, Lee County failed to issue a response regarding the validity of the permit. The debtor then instituted this adversary proceeding. The debtor's complaint seeks declaratory relief, essentially asking this court to grant it the right to build the complex in accordance with the existing building permit. It might be noted that in November of 1982, Lee County enacted a new Developmental Standards Ordinance ("DSO"), which reduced the maximum density allowed on the debtor's property to 26.5 units.

1. *The Validity of the Building Permits*

### A. *Introduction*

■ Lee County contends that the debtor's building permits are invalid for two reasons. First, the debtor allegedly violated Building Code requirements by failing to schedule inspections at six-month intervals. Second, the project was allegedly abandoned for more than six months, a further violation of the Building Code.

### B. *Failure to Schedule Inspections*

This court concludes that the debtor did not violate the Building Code, which was in effect at the time the original permits were issued, on the basis of failure to schedule inspections at six-month intervals. Section 106.3 of that Code provided in pertinent part that:

> Every permit issued shall become invalid unless the work authorized by such permit is commenced within six (6) months after its issuance, or if the work authorized by such permit is suspended or abandoned for a period of six (6) months after the time the work is commenced; provided that, for cause, one or more extensions of time, for periods not exceeding ninety (90) days each, may be allowed, and such extensions shall be in writing by the building official.

Building Code, *supra*, at § 106.3.

Presumably, Lee County contends that an inspection of the debtor's premises should have taken place on July 4, 1982, six months after the debtor's last inspection. Section 108.1(a) of the Building Code provides in part that the Building Official "shall inspect all buildings and structures, from time to time, during and upon completion of the work for which a permit was issued." There is no mention in that section that building inspections are to take place in six-month intervals. Section 108.2 provides in part that the Building Official "shall inspect ... at various intervals all ... work for which a permit is required, and a final inspection shall be made ... prior to the issuance of the Certificate of Occupancy ...." Again, no mention is made of the requirement of inspections at six-month intervals. Furthermore, pursuant to subsections 108.2(c) and (d), the only required inspections are for the foundation, frame, and completed project, and only at the time each phase is completed.

Lee County amended the Building Code, effective May 20, 1982, to require inspections at six-month intervals. Section 106.3 as amended provides in pertinent part that:

> The first inspection required by the permits shall be made within a six (6) month period or said permit shall be deemed invalid. All subsequent inspections shall be made within a six (6) month period of the most recent inspection until completion of the work, or permit shall become invalid. For purpose of this section, the foundation inspection will be considered the first inspection.

Lee County requests this court to retroactively apply the Building Code as amended to the debtor's current situation. Such an application would necessarily mean that the debtor would be in violation of the Building Code as enacted by Lee County. This court denies Lee County's request on the basis that the requisite factors necessary for the retroactive application of the Building Code have not been established. *See, Hart Properties, Inc. v. Metropolitan Dade County,* 346 So.2d 1199 (Fla.Dist.Ct. App.1977) (zoning change must be reasonably related to public health, safety, morals and welfare); Fla.Stat.Ann. §§ 163.205 (West 1972 & Supp.1983) (a county's com-

prehensive land-use plan, and zoning ordinances or regulations must coordinate existing and future needs to protect public health, safety, convenience, morals, and general welfare.) Overall, this court finds Lee County's inspection argument to be frivolous.

If the allegedly missed inspection were truly significant, Lee County could have formally provided the debtor with written notice as to the requirement for an inspection. Instead, these proceedings have continued for some time before Lee County formally declared its position. *See, In re Island Club Marina*, 32 B.R. 331 (Bkrtcy. N.D.Ill.1983), *appeal dismissed* No. 83 C 6394 (N.D.Ill. Dec. 16, 1983). As retroactive application of the Building Code is inappropriate in this instance, this court need not address the question of whether the amendment is arbitrary, discriminatory or abusive. *See, The Florida Companies v. Orange County, Florida*, 411 So.2d 1008, 1012 (Fla.Dist.Ct.App.1982).

C. *Abandonment of the Property.*

■ Lee County raises an additional argument that the debtor had abandoned its premises for longer than a six-month period, a conclusion which it is argued would also render the building permits invalid. Reviewing the various documents and evidence, this court concludes that the debtor did not abandon construction of the project. While it is true that the debtor halted on-site construction on January 8, 1982, the evidence indicates that the debtor continued to take action necessary to the completion of the project. This court finds as persuasive authority the case of *Hollywood Beach Hotel Co. v. City of Hollywood*, 329 So.2d 10 (Fla.1976). In *Hollywood*, the court held that a developer's ten-month-long off-site preparations conducted prior to the inception of any construction work, did not constitute abandonment as contemplated by the relevant Florida Building Code. In the instant case, several million dollars have already been expended by the debtor towards completion of the project, a factor not present in *Hollywood*.

■ The inclusion of off-site work under the permit is not inconsistent with former Section 106.3. In fact, the former Building Code did not delineate standards for determining abandonment or suspension of work. Lee County argues that the inclusion of off-site work into the scope of Section 106.3 will render the provision's permit conditions meaningless. This court disagrees with that analysis. Permit conditions would be meaningless without recognition that off and on-site activities in the construction process are inseparable. Without such ongoing activities as revising, planning and financial discussions, a construction project would never come to fruition. Furthermore, Lee County's fear that a permit could exist indefinitely if the debtor constantly revises its plans or negotiates with its lender is groundless. This court notes the principle that, unless a specific completion time is required, most permits exist until the project for which they were issued is completed. *See*, McQuillan, *The Law of Municipal Corporations*, § 25.152 (3rd Ed.1983).

D. *Equitable Estoppel*

■ A further principle present in this case is the concept of equitable estoppel. The doctrine of equitable estoppel operates to prevent the revocation or denial of renewal of a permit where the permittee relied on the administrative official's representations that the property could be used for a particular purpose. *Hollywood*, 329 So.2d 10; *Sakolsky v. City of Coral Gables*, 151 So.2d 433 (Fla.1963). As a general rule, a building permit does not create vested property or contract rights for the permittee. However, a significant exception to this rule provides that the permit gives rise to property rights and cannot be revoked where the permittee has materially altered his position in reliance upon the permit's validity, or upon some act or omission of a governmental unit. *See Hollywood*, 329 So.2d 10; *Sakolsky*, 151 So.2d 433; *City of Gainesville v. Cone*, 365 So.2d 737, (Fla.Dist.Ct.App.1979). These cases provide that a builder's reliance invokes the doctrine of estoppel where the permittee

has spent money, incurred liability, performed work under the permit, or otherwise materially relied upon the permit. The doctrine of equitable estoppel, however, will not protect a builder who perpetrates fraud, concealment, or misrepresentation to secure a permit. *See* cases cited *supra; e.g., Montsdoc v. Highlands Bank & Trust Co.*, 95 So.2d 666, 668 (Fla.Dist.Ct. App.1923). There is only one situation in which a municipality can overcome the builder's reliance upon a permit and deflect the application of equitable estoppel. The municipality must show that a new peril to health, safety, morals, or general community welfare has arisen, since the granting of the permit, and thereby necessitates the subsequent rezoning, even to the permittee's detriment. *Hollywood*, 329 So.2d 10; *City of Fort Lauderdale v. Lakes Corn*, 427 So.2d 239 (Fla.Dist.Ct.App.1983).

■ In addition to preserving the debtor's permits, the doctrine of equitable estoppel precludes Lee County from reducing the debtor's 75-unit density capacity to 26.5 units under the Developmental Standards Ordinance (DSO). The debtor quite reasonably relied in good-faith upon the original 75-unit zoning as it was provided in consideration of the two easements. The permits were issued only upon the debtor's agreement to create the easements in behalf of Lee County and the utility company. The conservation easement, executed in December 1981, only one month before Lee County claims the debtor abandoned construction, states in pertinent part:

> That in consideration of and pursuant to a zoning/density decision made by the Grantee (Lee County) about the Grantor's (debtor's) property, the Grantor and Grantee stipulated and agreed that Tract D would be the subject of this conversation easement.

In short, the debtor agreed to be bound to the easement's terms under Florida statutes and to maintain the land in its natural condition. Concurrently, Lee County should be bound to its original density decision of 75 units.

The debtor has substantially relied on its original zoning by undertaking off-site planning and expending $3 million to date, and is therefore entitled to a vested right in the continuation of the zoning. *Hollywood*, 329 So.2d 18; *The Florida Companies v. Orange County, Florida*, 411 So.2d 1008 (Fla.Dist.Ct.App.1982) (court estopped governmental body where the builder had not received final approval of its site plans, but had made expenditures in reliance of preliminary plat approvals); *Town of Largo v. Imperial Homes Corp.*, 309 So.2d 571 (Fla.Dist.Ct.App.1975) (estoppel applied even though a building permit had not been issued and no physical changes had been made on the property).

■ The debtor's reliance is not lessened simply because a new building official has been elected and now wants to enforce the Building Code more strictly than when the debtor's permits were issued. *Sakolsky*, 151 So.2d 435 (municipality was estopped from rescinding permit where permittee materially changed its position and incurred substantial expense in reliance on the permit even though permittee may have known that a municipal election and political controversy might change its zoning) *City of North Miami v. Margulies*, 289 So.2d 424 (Fla.Dist.Ct.App.1974) (government's newly elected city council may be estopped from rezoning even where the original representations upon which builder relied were not solidly binding, as with a conditional-use permit).

## II. *Bankruptcy Concerns*

■ In addition to the foregoing reasoning, this court finds that provisions of the Bankruptcy Code necessitate a finding that the permits in question are property of the debtor's estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (Supp. V. 1981). *See Lambillotte v. Charlotte County*, 25 B.R. 392 (Bkrtcy.M.D.Fla. 1982) (building contractor's Certificate of Competency considered property of the estate).

In the recent case of *U.S. v. Whiting Pools, Inc.*, ——— U.S. ———, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court analyzed the legislative history of section 541. The Court ultimately gave a wide reading into what should be considered property of the estate, stating that "a reorganization effort would have small chance of success ... if property essential to running the business were excluded from the estate." *Id.* at 2311; *See Harris v. Lamping*, 12 B.R. 38 (Bkrtcy.E.D.Wis. 1981) (liquor license is property of the estate for purpose of section 541).

The debtor's property rights are protected through several provisions of the Code. One key provision is the automatic stay provisions of section 362. Section 362 provides, in relevant part, that:

(a) except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate;

11 U.S.C. § 362 (Supp. V. 1981).

The broad protection of the stay was intended to "reach all proceedings, including license revocations, arbitrations, administrative and judicial proceedings ... and includes proceedings even if they are not before governmental tribunals." *In the Matter of R.S. Pinellas Motel Partnership v. Ramada Inns, Inc.*, 2 B.R. 113, 117–8 (Bkrtcy.M.D.Fla.1979). The *Pinellas* court applied section 362(a)(3) to protect a debtor's licensing agreement against removal from the estate by the licensor. The *Pinellas* rationale applies to the instant case:

Intangible property rights, e.g., rights acquired under a license agreement are properties of the estate and are capable of possession; (cite omitted). Thus, an attempt to cancel such rights, after the commencement of the case may come within the protective provisions of the Code under subclause (a)(3) of Sec. 362; 11 U.S.C. § 362. This is so because the cancellation of the License Agreement may be deemed to be an attempt to obtain possession of "property" of the estate.

*Id.* at 118.

As with all rules, there is an exception to the automatic stay provision. Section 362(b)(4) excepts from the stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce ... (its) police or regulatory power." 11 U.S.C. § 362(b)(4) (Supp. V. 1981). Congress intended this section to receive "narrow construction" so that under its provision the governmental unit may protect health and safety. The provision is inapplicable, however, to the governmental unit's protection of a pecuniary interest in property of the debtor or estate. 124 Congressional Record H11089, 11C U.S.Code Congressional Administrative News 660–61 (December 1978). A governmental unit's police power is somewhat limited by legislation but, generally, the scope has been determined on a case by case basis. On the nature of police power, the Supreme Court has stated that:

An attempt to define its reach or trace its outer limit is fruitless, for each case must turn on its own facts. \* \* \* Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs. Yet they merely illustrate the scope of the power and do not delimit it.

*Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954).

Where the governmental unit's actions are not a response to an urgent need to protect the citizen's health and welfare, the actions will be stayed pursuant to section 362. *In re King Memorial Hospital, Inc. v. Department of Health and Rehabilitative Services, State of Florida,* 4 B.R. 704, 708 (Bkrtcy.S.D.Fla.1980).

■ In the instant case, the automatic stay provisions of the Code prevent Lee County from changing the debtor's density zoning under the County's November 1982 Developmental Standards Ordinance (DSO), which was enacted four months after the debtor filed its Chapter 11 petition. Section 362(b)(4) of the Code, which allows governmental units to avoid the automatic stay in certain situations is inapplicable in the instant case. Lee County has failed to prove to this court that the exceptions which would justify the lifting of the stay are present in this case. More important, Lee County has not established that the DSO protects the health and safety of Lee County residents. Therefore, subjecting the debtor to a zoning change from 75 to 26.5 units would affect property of the estate, destroy the debtor's site-plan and, ultimately, thwart the debtor's rehabilitation. This conclusion follows from the well-established policy that the purpose of Chapter 11 is "to permit successful rehabilitation of debtors." *NLRB v. Bildisco & Bildisco,* —— U.S. —— at ——, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984) (hereinafter cited as *Bildisco* ).

In *Bildisco,* the Supreme Court stated that bankruptcy court decisions must be made with emphasis on the "policies of flexibility and equity built into Chapter 11 of the Bankruptcy Code." Id. at 10. The *Bildisco* Court explicitly endorsed the Bankruptcy Court's role in assisting a debtor to achieve successful rehabilitation. Id. at 11. As the debtor's permits were valid on July 16, 1982, when the debtor filed its Chapter 11 petition, the automatic stay protects them against expiration or revocation. Thus, the DSO, which was enacted after the debtor's petition, cannot retroactively be applied in this case. To hold otherwise would be contrary to the politices and goals of the debtor's rehabilitation as stated in Bildisco, as well as contrary to the language of the Code.

■ Additionally, the debtor is protected under the Code from discriminatory treatment by a governmental unit such as Lee County. 11 U.S.C. § 525 (Supp. V. 1981). In relevant part, section 525 states that:

> A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title....

11 U.S.C. § 525 (Supp. V. 1981).

This section of the Code prohibits the actions of governmental or quasi-governmental units which can adversely affect the debtor's fresh start. H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–67; S.Rep. No. 989, 95th Cong., 2d Sess. 81, U.S.Code Cong. & Admin.News, p. 5787 (1978).

■ Pursuant to this, an applicant's financial status is one factor a licensing agency can use in determining whether to grant a permit. However, the licensing agency cannot refuse a permit based solely upon the fact that a debtor has sought relief under the Bankruptcy Code. *Matter of Lambillotte v. Charlotte County,* 25 B.R. 392 (Bkrtcy.M.D.Fla.1982). Consequently, Lee County is constrained to consider the consequences of any future actions which it might take against the debtor in light of the anti-discriminatory provisions of Section 525.

### III. *Conclusion*

In summary, this court rejects Lee County's contentions that the building permits possessed by the debtor are invalid due to either abandonment of the property or failure to schedule building inspections. The debtor's off-site work constituted active work thus precluding the claim of abandonment. Furthermore, the principles of equitable estoppel under Florida Law similarly

run in favor of a finding that the debtor is entitled to the possession of valid building permits.

In addition, the Bankruptcy Code concept of allowing the debtor an adequate opportunity for a fresh start similarly militates against a finding for Lee County. At the time the debtor filed its Chapter 11 petition, the permits became property of the estate. As such, the automatic stay provisions of Section 362 became applicable. In that Lee County failed to prove to this court that it was acting under one of the exceptions to the normal stay provisions, it should refrain from taking any future activity designed to hinder the debtor's rehabilitative efforts. Consequently, Lee County is to issue all necessary documentation which would allow the debtor to continue construction on the proposed complex. This conclusion, naturally, does not prohibit Lee County from taking future action before a proper court in order to insure that the debtor's complex does not unduly affect the health and welfare of the surrounding community.