In re ISLAND CLUB MARINA, LTD., an Illinois Limited, Partnership, Debtor.

ISLAND CLUB MARINA, LTD., an Illinois Limited Partnership, Plaintiff,

v.

LEE COUNTY, a political Subdivision of the State of Florida, Defendant.

Bankruptcy No. 82 B 9256.
Adv. No. 83 A 0481.

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 8, 1984.

MEMORANDUM OPINION
AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

I.

The matter before this court is a petition by Island Club Marina, Ltd., (Debtor) for taxation of attorneys' fees and court costs against Lee County, a political subdivision of the State of Florida (Lee County). The debtor seeks an assessment of fees and costs against Lee County based on allegations of abusive bad faith in litigation practices by Lee County. The fees in issue stem from an adversary proceeding between the parties, which this court recently resolved in favor of the debtor. *In Re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr.N.D.Ill.1984). (Hereinafter cited as *Island Club Marina*). A brief review of that matter will clarify the debtor's allegations of bad faith against Lee County.

II.

In *Island Club Marina* the debtor, an Illinois limited partnership, sought declaratory relief to determine the validity of building permits issued to it by Lee County. The debtor received the building permits in April 1981 for the development of a 75-unit condominium complex on the debtor's property in Fort Meyers, Florida. The stipulated facts in *Island Club Marina* established that the debtor endured a delay before obtaining the permits. Initially, Lee County withheld the permits because of an alleged conflict between the debtor's proposed 75-unit complex and a local density ordinance. Finally, the permits were issued after the debtor appealed to Lee County's Board of Commissioners and granted two easements to Lee County in consideration of the permits.

After receiving the permits, the debtor incurred approximately $3 million in construction and planning costs. On July 16, 1982, financial difficulties forced the debtor to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The debtor's reorganization plan anticipates completion of the condominium project. Completion, however, requires the debtor's ability to secure construction loans, which are obtainable only with valid building permits. Therefore, the debtor requested a confirmation from Lee County of the validity of the building permits. Lee County did not respond to the debtor's inquiries and thereby withheld confirmation. Eventually, the Lee County officials orally indicated to the debtor that the permits were probably invalid as the debtor had allegedly abandoned on-site construction for a six-month

period in violation of a newly amended code. The amended building code had not been in effect when the permits had been issued. Finally, Lee County officials expressed their concern over the debtor's financial condition and requested updated information about the debtor's project. The officials indicated that a final determination of the validity of the permits would be forthcoming. The debtor promptly provided an update of its construction plans, but Lee County never responded to the question of the permits' validity. Consequently, the debtor instituted an adversary proceeding seeking declaratory relief. Lee County urged this court to apply the amended building code retroactively to the debtor and thereby invalidate the debtor's permits. Lee County also urged this court to apply a new density ordinance retroactively to the debtor's property. The ordinance which had been enacted shortly after the debtor filed the Chapter 11 petition, reduced the maximum density allowed on the debtor's property from 75 to 26.5 units.

One and one-half years after the debtor first requested confirmation of the permits from Lee County, the debtor received the determination by this court that the permits are valid as originally issued. Furthermore, this court found that the permits are assets of the debtor's estate and, therefore, protected by the automatic stay provision of the Bankruptcy Code. 11 U.S.C. 362 (Supp. V 1981). *Island Club Marina*, 38 B.R. at 854. Also, Lee County was cautioned against any discriminatory action against the debtor, which the Bankruptcy Code prohibits under Section 525. *Id.* at 854.

According to the debtor's petition, the pursuit of the declaratory judgment on the validity of the permits cost the debtor $31,812.40 in attorneys' fees. The debtor alleges that Lee County has forced the debtor to participate in usually insubstantial litigation for one and one-half years. The debtor speculates that Lee County protracted the litigation in hopes that the debtor's reorganization efforts would collapse before trial.

## III.

This court has statutory and equitable discretion to assess attorneys' fees against a party that has furthered litigation in a bad-faith, vexatious, or abusive manner. Pursuant to 28 U.S.C. § 1927 (Supp.1981), this court may assess attorneys' fees and costs against

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Legislative history underscores the application of § 1927 to pending litigation by describing its application to an attorney who engaged in "dilatory litigation practices" and "unnecessary delays in litigation." House Conference Report No. 96–1234, 96th Cong. 2d Sess., Reported in 1980 Code Cong. & Admin. News, 2716, 2781 at 2781. This statute sanctions an attorney who multiplies or unnecessarily delays the *ongoing* proceedings in a vexatious, unreasonable fashion. *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 794 (7th Cir.1983) (Emphasis added).

■ Vexatious conduct has been defined as that which is undertaken in bad faith or with the intent to harass. *Overnite*, 697 F.2d at 795. Although these definitions appear interchangeably in all the relevant cases, the best reduction of the test however asks whether the attorney, in the exercise of good judgment, should have known that his charges were frivolous. *Overnite*, 697 F.2d at 794; *Matter of Chronopoulous*, 36 B.R. 364, 366 (Bankr.N.D. Ill.1984).

■ Section 1927 applies to attorneys, but agency law principles suggest it would be reasonable to apply Section 1927 sanctions where an attorney's client has directed the attorney's dilatory litigation practices. Furthermore, it is likely that Section

1927 would reasonably reach a quasi-governmental entity, such as Lee County, which operates under the direction of officials, commissioners and attorneys. It was Lee County's Building Code officials and attorney who met with the debtor and ignored the debtor's requests for validation of its building permits. *In Re Island Club Marina, Ltd.,* 38 B.R. 847 (Bankr.N.D.Ill. 1984).

■ In addition to the Section 1927 sanctions against attorneys, courts of equity may assess attorneys' fees against a party pursuant to a judicially created exception to the "American rule". The "American rule" requires each party to bear the burden of its own attorney fees, but the exception shifts the burden of costs and fees where an action has been initiated in bad faith, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), or where the losing party has conducted the litigation "vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). For an exhaustive list of bankruptcy courts which have assessed attorneys' fees against a party under the American rule's bad-faith exception, see *In Re Hammett,* 28 B.R. 1012, 1015 (Pa.Dist.Ct.1983).

■ Cases relying upon the bad-faith exception to the American rule state a test similar to that followed with Section 1927: Bad faith exists where a party has proceeded only with the intent to harass or delay its opponent. *Hammett,* 28 B.R. at 1018. The cases caution, however, against characterizing a colorable claim as a bad-faith claim. *In Re Melting Moments, Inc.,* 21 B.R. 173 (Bankr.S.D.N.Y.1982). A claim is colorable and, therefore, not in bad faith when

> ... it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts actually

*had been established.* (emphasis in the original).
*Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980). Therefore, posing an as yet unanswered factual question is not bad faith as a matter of law. *Public Finance Corp. v. Freeman,* 712 F.2d 219, 222 (5th Cir. 1983).

## IV.

With all of the above in mind, the court must determine whether Lee County's conduct, which precipitated the debtor's filing of an adversary proceeding for declaratory relief and, now, whether Lee County's appeal of *Island Club Marina* constitute bad faith. As Lee County's officials created delays and rezonings after the debtor filed its petition for relief under Chapter 11, but before it was engaged in litigation with the debtor, Lee County's conduct fails to fall clearly into any of the areas of proscribed conduct. In addition to the awkward timing of the alleged bad faith, the debtor bearing the burden of proof, has not delineated instances or established facts which indicate that Lee County and its officials actually behaved vexatiously, frivolously, wantonly or oppressively.

Lee County certainly delayed issuance of the permits and, later, refused to confirm or deny the validity of the permits, but the debtor's proof in its complaint in *Island Club Marina* never established the reasons for that delay. The debtor's petition also fails to elaborate on these points.

Arguably, Lee County delayed pre-litigation stages in hope that the debtor would be forced to abandon the property. But this speculation has not been sufficiently supported by the facts. Lee County's conduct approaches, but does not reach, bad faith. See *In Re Lichstrahl,* 27 B.R. 733 (Bankr.S.D.Fla.1983) (debtor not entitled to attorneys' fees where creditor's conduct approached but did not reach point of bad faith). The debtor has not pointed to specific, extraordinary instances of bad-faith conduct by Lee County, other than Lee County's pre-litigation lack of cooperation and filing of an appeal from the determina-

tion of the validity of the building permits. Consequently, there is only a strong unsubstantiated suggestion that Lee County pursued some form of discrimination against the debtor. On the other hand, it is entirely possible that Lee County treats all its building permittees as it did the debtor.

## V.

■ On the basis of vague allegations and mere speculations, the court cannot apply Section 1927 or the exception to the American rule. In fact, a court should assess costs "only in instances of a serious and studied disregard for the orderly process of justice." *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir. 1968), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). There must be "an extraordinary showing before a court may find bad faith on the part of one asking an open legal question." *Public Finance Corp.,* 712 F.2d at 222. The debtor has failed to produce evidence in support of its position.

The court denies the debtor's petition for taxation of attorneys' fees and costs. Counsel will prepare the appropriate order within five (5) days.