**In re GLOBAL INTERNATIONAL AIRWAYS CORPORATION, Debtor in Possession.**

**GLOBAL INTERNATIONAL AIRWAYS CORPORATION, Plaintiff,**

v.

**Donald D. ENGEN, Administrator, and Federal Aviation Administration, Defendants.**

**Civ. No. 85–W–074–6.**

United States District Court, W.D. Missouri, W.D.

April 18, 1985.

---

**850**

Alex M. Lewandowski, Howard O. Lay, Griffin, Dysart, Taylor, Penner & Lay, Kansas City, Mo., for plaintiff.

E. Eugene Harrison, U.S. Atty., Kansas City, Mo., Jeffrey P. Minear, Lands & Natural Resources, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER DENYING PRELIMINARY INJUNCTION AND DISMISSING COMPLAINT

SACHS, District Judge.

This litigation arises as an adversary proceeding in bankruptcy, which the defendants successfully requested be withdrawn from processing by the bankruptcy judge.

Plaintiff debtor was formerly engaged in operating an interstate air transportation business. Its four aircraft are subject to aircraft noise regulations adopted by defendant Federal Aviation Administration ("FAA") pursuant to legislation enacted in 1979. 49 U.S.C. § 2101 *et seq.* The regulations prohibit certain aircraft operation after December 31, 1984, except with noise controls. *See* 14 C.F.R. Parts 36 and 91.-303, Federal Aviation Regulations. Compliance is most feasibly achieved by use of a "hush kit." A survey of the industry and regulatory background is contained in a very recent opinion of the United States Court of Appeals for the District of Columbia Circuit. *Airmark Corp. v. FAA*, 758 F.2d 685, (1985) (vacating denial of exemption, staying enforcement of regulation as to plaintiffs and remanding to FAA for development of a consistent pattern of evaluation of exemption applications).

Plaintiff, along with other carriers, received a notice by letter from the FAA that its noncomplying aircraft were "grounded." It then formally applied for an exemption on February 8, 1985. The FAA has 120 days to act on the application. 14 C.F.R. § 11.25(b). Apparently because of the mounting total of daily losses (or perhaps because it received word of the favorable *Airmark* decision and other stay requests), plaintiff moved the bankruptcy court, on April 2, 1985, to grant it a preliminary injunction and to "continue" the automatic stay allegedly granted by 11 U.S.C. § 362.[1] The bankruptcy court scheduled a hearing for April 9, 1985, on which date the FAA moved to withdraw the proceeding from the bankruptcy judge, pursuant to 28 U.S.C. § 157(d).

This court summarily withdrew the matter from the bankruptcy judge, being of the view that a duty of withdrawal was apparent because the proceeding involves "both Title 11 and other laws of the United States regulating organization or activities affecting interstate commerce." It was the court's initial view that this was essentially an *Airmark*-type controversy, involving administrative law and regulations, and questions of jurisdiction of courts other than the court of appeals to deal with matters reviewable exclusively by that court.

---

1. The contention that plaintiff may operate without noise controls, under the automatic stay provisions, is inconsistent with plaintiff's grounding of its aircraft, effective January 1, 1985.

*See* 49 U.S.C. § 1486. Further consideration discloses that serious questions of bankruptcy law and practice are also involved, but nothing has been developed that would cause me to revoke the withdrawal as being inappropriate.

■ It is my conclusion that this court (as well as the bankruptcy court) probably has general equitable jurisdiction to enjoin regulatory action intended to preserve the environment, except where the courts of appeals have exclusive jurisdiction, but such action is not automatically stayed by bankruptcy.

■ The automatic stay provisions of the Bankruptcy Act are not applicable, because this case involves the enforcement of environmental protection laws. *Penn Terra Ltd v. Dept. of Environmental Resources*, 733 F.2d 267 (3rd Cir.1984). To the extent there may be bankruptcy court decisions somewhat narrowing this exemption from the automatic stay provisions of the Act, they appear to be contrary to Congressional intent and the most recent appellate authority. See also *Ohio v. Kovacs*, — U.S. ——, 105 S.Ct. 705, 711–12, 83 L.Ed.2d 649 (1985), stating:

> [W]e do not question that anyone in possession of the site—whether it is [the debtor in bankruptcy] or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee—must comply with the environmental laws of the state of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.

■ *Penn Terra* confirms, however, that on application to the bankruptcy court that court may generally, in its sound discretion, issue an appropriate injunction against unreasonable and excessively burdensome regulatory action. 733 F.2d at 273 (citing 11 U.S.C. § 105). This conceivably may, for example, permit relief to a debtor in situations like that in *In re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr.N.D.Ill.1984), where the bankruptcy judge sustained the continuing validity of certain building permits and prevented post-adjudication zoning changes, even though the debtor had failed to schedule building inspections at six-month intervals, as required of permit holders not subject to rehabilitation under the Act. The bankruptcy judge in that case acknowledged the power of a "proper court" to make future orders insuring that the "debtor's complex does not unduly affect the health and welfare of the surrounding community." 38 B.R. at 855. The operative word is "unduly," which apparently means that some *judicial* balancing of the needs of the bankrupt and the needs of the community is contemplated. A similar lesson may be drawn from *Penn Terra*, although it seems obvious that considerable judicial restraint is necessary, to avoid gutting proper exercise of the police powers in the name of rehabilitating owners in financial distress and assisting their creditors.

Defendants contend, however, that this court is entirely lacking in jurisdiction because Congress intended that exclusive primary jurisdiction should reside in the FAA. They cite *In re Braniff Airways, Inc.*, 700 F.2d 935, 942 (5th Cir.1983), where the Fifth Circuit ruled that control of landing slots for aircraft was not subject to the jurisdiction of the bankruptcy courts. By analogy to this case, it could be said that plaintiff's "right to fly" is not a property right, subject to bankruptcy jurisdiction, but is solely within the jurisdiction of the FAA, subject to appeal. As the *Braniff* court notes, however, there is some dicta to the contrary. The jurisdictional ruling of *Braniff* may not be accepted in the Eighth Circuit. *See, e.g., Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975) (bankruptcy injunction affirmed against District Director of the Internal Revenue Service, despite federal legislation facially to the contrary).

■ I am not fully persuaded that the *Braniff* decision soundly disposes of bankruptcy jurisdiction over landing slots by characterizing them as not being property

interests. The right to land, like the right to fly, seemingly is a critical aspect of an airline's operations and may well merit the attention and jurisdiction of bankruptcy judges. It is also somewhat troubling to find *Penn Terra* endorsing jurisdiction over environmental decisions of state and local administrative bodies while *Braniff* is cited to preclude such jurisdiction over similar decisions by a federal agency. It seems unlikely that Congress intended that a bankruptcy debtor's needs should override local regulations, on occasion, but never federal regulatory action.

One explanation is offered by the strong Congressional policy of subjecting federal agency review to the appellate rather than the district courts. The *Braniff* court mentions the availability of "limited review in the courts of appeals." 700 F.2d at 941. Significant clarification of the respective jurisdictions of the appellate courts and the district courts, to consider emergency relief in advance of administrative decisions, was achieved very recently in companion rulings of the Court of Appeals for the District of Columbia. *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984); *Air Line Pilots Ass'n v. CAB*, 750 F.2d 81 (D.C.Cir.1984). In the first case (*"TRAC"*) the court ruled that district courts do not have mandamus-type jurisdiction to review allegations of unreasonable delay or to compel agency action, when reviewing jurisdiction has been exclusively conferred on the court of appeals. The appellate court has exclusive jurisdiction to protect its prospective jurisdiction, and to allow coordination in the consideration of an impending controversy. In the second case (*"ALPA"*) the court

applied the *TRAC* ruling, and mandated prompt periodic reporting by the agency.

Plaintiff responds to *TRAC* and *ALPA* by saying it seeks a stay or injunction against enforcement of the regulation, rather than an immediate or prompt decision on its exemption application. The courts of appeals have the power to stay enforcement, however, and have exercised such power in this context in the *Airmark* decision and in unreported decisions cited by defendants. The thrust of plaintiff's complaint, moreover, does relate to the exemption application rather than the initial regulation. The regulation itself could have been attacked several months ago. Plaintiff's complaint is directed toward the alleged mishandling of exemption applications. Under *TRAC, ALPA* and *Braniff,* exclusive judicial remedies are available in the appellate courts.[2]

While the court's jurisdictional ruling makes it unnecessary to consider entitlement in equity to a preliminary injunction, the court notes that it has now received advice that "Global's petition should be granted or denied no later than April 30, 1985." Defendants' Supplemental Memorandum dated April 16, 1985, page 12 n. 9. Under all the circumstances, it is quite unlikely that a court would impose an earlier deadline.[3]

For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED and the complaint is DISMISSED for lack of jurisdiction.

---

2. This case may also fall within the principle that where mandamus is available as a remedy (with incidental staying authority in the court with mandamus jurisdiction), a suit for an injunction cannot be successfully maintained. *See* 42 Am.Jur.2d *Injunctions* § 43 (1969). It may not be inappropriate to suggest in writing, as well as orally, that where the administrative agency has been engaging in an "exemption shell game" (*Airmark,* at 693) and administrative chaos seems to have resulted, a general stay order against enforcement of the regulation may be appropriate.

3. There is some explanation in the record for the belated filing of an application for exemption, given plaintiff's obligation to husband its funds and prevailing industry knowledge concerning the unlikelihood of grants of exemptions. As between plaintiff and the FAA, however, it would seem that the delay in litigation until April and the delay in filing an application until February would likely justify the agency in taking two more weeks to decide this matter.