In re Fernando A. **BENALCAZAR**, Debtor.

No. 02 B 06685.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 15, 2002.

Robert R. Benjamin, Benjamin, Berneman & Brom LLC, Chicago, IL, for debtor.

Daniel M. Feeney, Miller, Shakman & Hamilton, Chicago, IL, for creditor.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Chief Judge.

This Chapter 7 case is before the court on opposing motions, filed by the debtor and one of his creditors, dealing with the application of the automatic stay to state court contempt proceedings. As set forth below, (1) the *Rooker–Feldman* doctrine does not prevent this court from considering the merits of the parties' motions; (2) the automatic stay applies to civil contempt proceedings brought by an individual creditor; (3) the debtor has established that the creditor willfully violated the stay, requiring an award of actual damages, but punitive damages are not appropriate; and (4) the creditor has not established cause for relief from the stay.

### Jurisdiction

One of the principal issues raised by the pending motions is whether this court has jurisdiction to rule on the applicability of the automatic stay to a state court proceeding, after a state court has considered the issue. Of course, this court does have jurisdiction to consider the extent of its jurisdiction, *see In re Edwards,* 962 F.2d 641, 645 (7th Cir.1992), and the issue is addressed in the Conclusions of Law below. Apart from the disputed jurisdictional question, this court has jurisdiction to determine the applicability and enforcement of the automatic stay because it is a core matter arising in a case under the Bankruptcy Code (Title 11, U.S.C.) that has been referred to this court by the district court. 28 U.S.C. § 1334(a) (district court has jurisdiction over matters arising in bankruptcy cases); 28 U.S.C. § 157(a)-(b) (district court may refer bankruptcy cases to bankruptcy judges, who may make final decisions in core matters arising in such cases); Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois (effecting the reference); *Skaggs v. Fifth Third Bank (In re Skaggs),* 183 B.R. 129, 130 (Bankr.E.D.Ky.1995) (holding that enforcement of the stay in a referred case is a core matter).

### Findings of Fact

The facts relevant to the pending motion are not in dispute. Fernando Benalcazar, an individual doing business as Teddie Kossof Salons, Inc. ("Teddie Kossof"), commenced this bankruptcy case by filing a voluntary Chapter 7 petition on February 20, 2002. Prior to his bankruptcy filing, Benalcazar operated his business in space that was leased by a corporation, Teddie Kossof Salon & Spa, Inc. ("Salon & Spa"). Benalcazar guaranteed the lease; the lessor was Brookfield Retail Centers, Inc. ("Brookfield"). In April of 2001, ten months prior to the bankruptcy filing, Brookfield obtained a judgment in excess of $195,000 for breach of the lease against Salon & Spa and Benalcazar in the Circuit

Court of Cook County, Illinois (the "state court").

In the months before the bankruptcy, Brookfield engaged in substantial efforts to collect its judgment against Salon & Spa and Benalcazar:

* In August of 2001, Brookfield served Benalcazar with a citation to discover assets, pursuant to 735 ILCS 5/2–1402(a), requiring him to appear before the state court to answer questions about assets that might be used to satisfy the judgment. The citation generally required production of Benalcazar's own papers and records (which would include any records of the business that he conducted as Teddie Kossof) and specifically commanded production of various business records of Salon & Spa.

* In October 2001, after Benalcazar failed to appear as directed in the citation, Brookfield presented a motion for a rule to show cause, which was granted, requiring Benalcazar to appear in state court to explain why he should not be held in contempt for his failure to appear at the citation proceeding.

* On November 20, after Benalcazar appeared for examination without producing documents, Brookfield obtained an order continuing the citation proceedings and directing Benalcazar to produce personal business documents that he had identified during the examination. The order did not require Benalcazar to produce any records of Salon & Spa, because he denied possessing any such records.

* On December 14, 2001, Brookfield filed a motion for a second rule to show cause and for sanctions against Benalcazar (the "December 14 motion"). This motion is particularly significant, since it gave rise to the state court proceedings central to the motions pending in this court. The December 14 motion was premised on the assertion that Benalcazar had "thwarted Brookfield's efforts ... to obtain the business records of defendants/judgment debtors, Teddie Kossof ... and ... Salon & Spa ... and other documents responsive to Brookfield's Citation." The motion reiterated that Brookfield's citation "required that Benalcazar produce not only personal records but also certain business records of each of [Teddie Kossof] and the Salon & Spa," and cited testimony of Benalcazar that although he was an officer and principal shareholder of Salon & Spa, he did not have possession of the business records of either his proprietorship [Teddie Kossof] or Salon & Spa. The precipitating event for the December 14 motion was asserted to be a conversation in which a former attorney for Benalcazar told counsel for Brookfield that he had delivered business records of Teddie Kossof and Salon & Spa to Benalcazar. Depending on the date of this delivery (which had not been ascertained at the time of the motion), it was possible that Benalcazar's reported citation testimony denying possession of the documents had been false. On this basis, the December 14 motion made three specific requests for relief: (1) for a court order (the "rule" of the title of the motion) directing Benalcazar to show cause why he should not be held in contempt for failing to produce documents responsive to the citation and for "apparently making misrepresentations" about the documents; (2) for a court order "[c]ompelling Benalcazar to produce ... all documents responsive to the Citation," specifically including documents of both Teddie Kossof and Salon & Spa; and (3) for an award of all of Brookfield's attorneys' fees and costs in seeking compliance with the citation, specifically including not only the December 14 motion itself but also "costs

and fees incurred ... to appear in Court several times in connection with obtaining Benalcazar's compliance with the Citation."

• On January 7, 2001, Brookfield filed another motion against Benalcazar (the "January 7 motion") alleging other misrepresentations in connection with the citation proceedings. Both the December 14 motion and the January 7 motion, as well as the continued citation proceeding, were set to be heard on February 21, 2002.

At the hearing on February 21, the state court was informed of Benalcazar's February 20 bankruptcy filing, and accordingly entered an order (1) continuing the citation proceeding and the December 14 motion "pending the outcome" of the bankruptcy case, and (2) continuing the January 7 motion to March 14, 2002, for a hearing as to "whether this motion should be stayed pursuant to the bankruptcy filing" and, if not, for a hearing on the motion.

At the March 14 hearing, the state court determined that the January 7 motion for sanctions should not be stayed, held a hearing on that motion, and entered an order denying the motion on the merits. However, (despite the February 21 order staying the matter until the outcome of the bankruptcy case) the court also considered the merits of the December 14 motion for rule, and, at Brookfield's request, issued a rule against Benalcazar, requiring him to appear on April 18 to show cause why he should not be held in civil contempt for making false statements and failing to produce the requested records.

On the following day, March 15, 2002, Benalcazar filed his now pending motion, contending that Brookfield's actions in "proceed[ing] with post-judgment debt collection activity" in state court violated the automatic stay imposed by § 362(a) of the Bankruptcy Code. The motion seeks an award of damages, costs and attorneys' fees incurred as a result of the alleged violation.

Brookfield responded with its pending motion, seeking a declaration from this court that the automatic stay did not apply to its state court actions, or alternatively, seeking relief from the stay to continue the state court action.

At an initial hearing, this court determined that the motions raised the question of whether a ruling by the state court, holding the automatic stay inapplicable, deprived this court of jurisdiction to consider the question, under the *Rooker–Feldman* doctrine. The court allowed the parties an opportunity to brief this additional question.

On May 2, 2002, while the motion was under advisement, Brookfield filed a complaint in this court, objecting to Benalcazar's discharge in bankruptcy on the ground that he had made false statements under oath in the bankruptcy proceedings. On May 20, the deadline passed for filing complaints to determine the dischargeability of particular debts under § 523 of the Bankruptcy Code, without Brookfield filing a complaint to except from discharge any liability Benalcazar may have incurred for improper conduct in the citation proceedings.

## Conclusions of Law

The motions of Benalcazar and Brookfield raise four distinct legal questions:

(1) Did the state court make a ruling on the applicability of the automatic stay that precludes this court from enforcing the stay in connection with the state court contempt proceedings?

(2) If the question is open for decision, does the automatic stay apply to the contempt proceedings?

(3) If the automatic stay was applicable to the contempt proceedings, did Brookfield willfully violate the stay, and to what extent should damages be imposed for such a violation?

(4) Again, if the automatic stay is applicable, is Brookfield entitled to relief from the stay?

Each of these questions is in dispute, and the first two appear to be questions of first impression in this jurisdiction. However, because these questions all involve the automatic stay imposed by § 362(a) of the Bankruptcy Code, it is helpful to review the general operation of the stay before considering the specific issues raised here.

*The general operation of the automatic stay*

One of the central functions of bankruptcy law is to settle all claims against the debtor's estate promptly, in a single proceeding. Accordingly, even prior to the Bankruptcy Act of 1898, the Supreme Court recognized that the federal court presiding over a bankruptcy case might assert jurisdiction over claims pending in state forums, and, in the exercise of that jurisdiction, stay the state court proceedings. *See Ex parte Christy*, 44 U.S. 292, 318, 3 How. 292, 11 L.Ed. 603 (1845) ("We entertain no doubt that, under the provisions of the [jurisdictional] section of the [1841 Bankruptcy Act], the District Court does possess full jurisdiction to suspend or control ... proceedings in the state courts ... by acting on the parties through the instrumentality of an injunction ...."). At the same time, it was recognized that the federal court presiding over a bankruptcy had discretion to allow state court proceedings to continue. "[W]here suits are pending in the state courts, and there is nothing in them which requires the equitable interference of the District Court to prevent any ... wrong to other credi-

tors..., the parties may well be permitted to proceed in such suits ...." *Id.*

The Bankruptcy Act of 1898 was similarly interpreted as according to federal bankruptcy courts a discretionary power to stay nonbankruptcy proceedings. *See Continental Illinois Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry.*, 294 U.S. 648, 675, 55 S.Ct. 595, 606, 79 L.Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction, is ... inherent in a court of bankruptcy ...."). However, the delay and difficulty in obtaining discretionary stays eventually led to the creation of stays that went into effect automatically, upon the approval of a reorganization petition or the filing of a bankruptcy case. Such automatic stays were imposed in certain reorganization cases by the Chandler Act of 1938 (applicable in Chapter X and XII reorganizations), and were ultimately made generally applicable through the former Rules of Bankruptcy Procedure. *See Moratzka v. Visa U.S.A. (In re Calstar, Inc.)*, 159 B.R. 247, 257 (Bankr.D.Minn.1993) (citing the relevant statutes and rules). When the Bankruptcy Code was adopted in 1978, a generally applicable automatic stay was, for the first time, made part of the statute itself, 11 U.S.C. § 362.

■ As reflected in the legislative history of the Code, the automatic stay has two major purposes. One of these purposes is protection of the estate for the benefit of creditors—the same purpose cited in the early decisions finding inherent jurisdiction to enter a bankruptcy stay. H.R.Rep. No. 95–595, at 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6297 ("Without [the stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the

detriment of other creditors.") The other purpose was to advance the debtor's fresh start, providing immediate relief from the pressure of collection activity. *Id.* ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts .... It permits the debtor ... to be relieved of the financial pressures that drove him into bankruptcy.").

Section 362 accomplishes these goals in five steps. First, subsection (a) defines broadly the collection activities subject to the stay. Second, subsection (b) sets out exceptions to the stay, reflecting competing policy considerations. Third, subsection (c) defines the duration of the stay. Fourth, subsections (d)—(g) provide for relief from the stay. And finally, subsection (h) provides for the imposition of damages in cases of individuals injured by a willful violation of the stay.

For purposes of the present case, three additional aspects of the automatic stay, not expressly stated in § 362, are also significant.

■ • *Court orders obtained in violation of the automatic stay are generally void.* Most courts have held that the impact of the automatic stay is to place jurisdiction in the bankruptcy court over all matters subject to the automatic stay, both withdrawing the jurisdiction of other tribunals until relief from the stay is obtained and rendering orders obtained in violation of the stay void. *See LaBarge v. Vierkant (In re Vierkant),* 240 B.R. 317, 322–25 (8th Cir. BAP 1999) (collecting authorities). Consistent with the majority, the Seventh Circuit has stated that "[o]rders issued in violation of the automatic stay provisions of the bankruptcy code, see 11 U.S.C. § 362 (1978), ordinarily are void." *Matthews v. Rosene,* 739 F.2d 249, 251 (7th

Cir.1984) (dealing with the stay in the context of the Bankruptcy Act of 1898).

This reading of the Code follows the holding of the Supreme Court in *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). There, in dealing with an automatic stay imposed by the Frazier–Lemke Act, applicable to farm foreclosures, the Court held that a foreclosure order of the state court, in violation of the stay, "was not merely erroneous but was beyond its power, void, and subject to collateral attack." 308 U.S. at 440, 60 S.Ct. at 347.

■ • *Orders entered in violation of the automatic stay may be validated by the bankruptcy court through annulment of the stay.* In allowing for relief from the automatic stay, § 362(d) describes several potential forms of relief: "terminating, annulling, modifying, or conditioning" the stay. There is almost complete agreement among the reported decisions that "annulling" the automatic stay has the effect of validating an order that would otherwise be ineffective. *See, e.g., Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 976–77 (1st Cir.1997); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 911 (6th Cir.1993); *Ung v. Boni (In re Boni),* 240 B.R. 381, 384 (9th Cir. BAP 1999). Indeed, it is the potential for retroactive validation of an act done in violation of the automatic stay that has led a minority of courts to hold that such acts are "voidable" rather than void. *See Elbar Investments, Inc. v. Pierce (In re Pierce),* 272 B.R. 198, 206–07 (Bankr.S.D.Tex.2001) (discussing Fifth Circuit authority). Again, in *Matthews v. Rosene,* the Seventh Circuit indicated that a bankruptcy court might employ equitable considerations in giving effect to an order entered in violation of the automatic stay.

■ At the same time, it is clear that only the court presiding over the bank-

ruptcy proceeding has the authority to grant any relief from the automatic stay. This follows both from the language of § 362(d) (providing for "the court" to grant relief, in a context plainly referring to the bankruptcy court) and from the purpose of the automatic stay, protecting the jurisdiction of the bankruptcy court. *See Sunshine Development, Inc. v. FDIC,* 33 F.3d 106, 114 (1st Cir.1994) ("While the stay ensures that most matters related to the debtor's estate will come under the wing of a single bankruptcy court in the first instance, further provisions of the same statute permit the bankruptcy court to relax the automatic stay under enumerated conditions.") (footnote omitted). The decisions are uniform in finding exclusive bankruptcy jurisdiction to grant relief from the stay. *See, e.g., Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62–63 (6th Cir.1983); *Constitution Bank v. Tubbs,* 68 F.3d 685, 691 (3d Cir.1995) ("Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case.").

■ • *The bankruptcy court has exclusive jurisdiction to impose sanctions for violation of the automatic stay.* Although there are not many decisions dealing with the subject, it is generally accepted that only the bankruptcy court has authority to punish parties for violating the automatic stay. In *Eastern Equipment & Services Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 120–21 (2d Cir.2001), the Second Circuit held that state court tort actions to enforce the automatic stay were preempted by the comprehensive provisions of the Bankruptcy Code, intended to achieve uniform application of bankruptcy law. *Accord MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 913–16 (9th Cir. 1996). Similarly, in *Halas v. Platek,* 239 B.R. 784, 792 (N.D.Ill.1999), the district court, after a thorough analysis of the case law, concluded that allowing state courts to impose penalties for stay violations "would undermine Congress' intent to have one uniform bankruptcy system." A separate, practical consideration, also indicates that only bankruptcy courts should impose sanctions for stay violations: any sanctions issued by a nonbankruptcy forum would be of no effect in the event that the automatic stay was annulled, and, as discussed above, only the bankruptcy court has authority to annul the stay.[1]

*The automatic stay issues raised by the pending motions*

1. *Rooker–Feldman and the state court's ruling on applicability of the automatic stay*

All of the questions raised by the motions pending in this bankruptcy case in-

---

1. The Seventh Circuit's decision in *Aiello v. Providian Financial Corp.,* 239 F.3d 876 (7th Cir.2001), does not contradict this rule. In *Aiello,* the court held that damages for emotional distress were not available, under federal law, as a remedy for a violation of the automatic stay, but that such damages might be available for improper collection practices under state tort law. 239 F.3d at 880 ("A creditor who resorts to extortion or intimidation exposes himself to a suit under state tort law."). The court's citation of state decisions, *id.* at 881, makes it clear that the potential for emotional distress damages arises not from a violation of the automatic stay, but from other conduct, sanctionable pursuant to applicable nonbankruptcy law. *See, e.g., Sherman v. Field Clinic,* 74 Ill.App.3d 21, 26–27, 29 Ill.Dec. 597, 392 N.E.2d 154, 159 (1979) (finding that a complaint alleging intentional infliction of emotional distress by a collection agency stated a cause of action under Illinois tort law). *Aiello's* recognition that a debtor in bankruptcy might have a state law tort action against a creditor is completely consistent with the general rule that only a bankruptcy court may impose sanctions on the distinct grounds of violation of the automatic stay.

volve the application of the automatic stay to civil contempt proceedings pending in state court. The first issue that must be addressed in considering the motions is whether the state court made a ruling on the applicability of the stay that removes this court's jurisdiction to consider the questions.

Certainly, the state court made a determination that the automatic stay did not apply to the contempt proceeding that Brookfield sought to continue against Benalcazar after his bankruptcy filing. The state court was informed of Benalcazar's bankruptcy filing at a hearing on February 21, 2002, the day after the filing, and continued the proceedings expressly to allow for a determination of whether the automatic stay applied to one of the motions then pending before that court. At the next hearing, on March 14, the state court heard argument from Brookfield's counsel that the automatic stay was inapplicable, and issued a rule to show cause why Benalcazar should not be held in contempt, requiring his further appearance in April. Although the state court's March 14 order does not expressly state the court's determination as to the automatic stay, it is apparent from the February 21 order that the court was fully cognizant of the potential application of the stay, and would not have issued a rule to show cause unless it had determined that the stay was inapplicable. Benalcazar does not argue to the contrary.

The determination of the state court that the automatic stay did not apply to the contempt proceedings is the basis for the argument, advanced by Brookfield, that this court lacks jurisdiction to consider that question under the *Rooker–Feldman* doctrine. This doctrine—named for two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)—is a limitation on the jurisdiction of lower federal courts, based on the statute, 28 U.S.C. § 1257, that grants the Supreme Court of the United States jurisdiction to review decisions of the highest court of a state. Specifically, "[t]he *Rooker–Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in [the Supreme] Court." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 622, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989).

■ The *Rooker–Feldman* limitation on federal jurisdiction has been extended beyond its core application—to actions that directly seek review of final decisions of the highest court of a state—in at least two respects. First, the doctrine bars attempts to obtain review in a lower federal court of any final state court judgment, not just decisions of the highest state court. *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Michael Finch & Jerome Kasriel, *Federal Court Correction of State Court Error: The Singular Case on Interstate Custody Disputes*, 48 Ohio St. L.J. 927, 976 (1987):

> While it is true that state judgments are not ripe for appeal to the Supreme Court until the state appellate process is exhausted, this simply reflects a timing requirement of 28 U.S.C. section 1257. The absence of state appellate finality does not alter the practical reality that lower federal court review will constitute the functional equivalent of an appeal—and such appellate review, according to Rooker–Feldman, is totally lacking in statutory authority. Thus, Rooker–

Feldman is relevant at the time that the state trial court's judgment is final, regardless of whether section 1257 review is yet timely.

(footnotes omitted). As the Bankruptcy Appellate Panel for the Ninth Circuit noted, "If the *Rooker–Feldman* doctrine solely barred federal review of judgments which had been fully appealed through the state court system, it would ... creat[e] incentives for disappointed state court participants to forum-shop and choose the federal courts instead of appealing their cases to the states' appellate courts." *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 29 (9th Cir. BAP 1997).

■ Second, in order for the *Rooker–Feldman* doctrine to apply, a state court decision need not be directly challenged; lower federal courts also lack jurisdiction over actions that are "inextricably intertwined" with the merits of a state court judgment. In *Feldman* itself, the Supreme Court held that "[i]f the ... claims presented to a United States district court are inextricably intertwined with the state court's [judgment], then the district court is in essence being called upon to review the state court decision." 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16. *See also Remer v. Burlington Area School District*, 205 F.3d 990, 996 (7th Cir.2000) (noting that "it can be difficult to discern which claims are and which claims are not 'inextricably intertwined' with a state judgment," but that "the crucial point is whether 'the district court is in essence being called upon to review the state-court decision' ") (citations omitted).

Brookfield's *Rooker–Feldman* argument here is straightforward: the state court implicitly entered a judgment that the automatic stay did not apply to the contempt proceedings that Brookfield was prosecuting in that court, and by seeking sanctions against Brookfield in this court for violation of the automatic stay, Benalcazar is necessarily asking this court to review the state court's judgment, contrary to *Rooker–Feldman*. This argument, however, is incorrect, for two distinct reasons.

■ First, the state court's determination that the automatic stay did not apply was not a final judgment, subject to appeal, and so does not implicate *Rooker–Feldman's* rule against a lower federal court exercising appellate jurisdiction over state court judgments. The matter for decision by the state court was Brookfield's December 14 motion; the specific substantive relief sought by this motion was an order for Benalcazar to turn over documents and an award of attorneys' fees and costs. The state court never issued a final judgment on this motion; its determination respecting the automatic stay was made in the context of an order setting the motion for hearing. Thus, the state court's ruling as to the automatic stay was plainly interlocutory, subject to reconsideration at any time prior to entry of a final judgment, and, unless incorporated in a final judgment, not subject to appeal. *See Brauer Machine & Supply Co. v. Parkhill Truck Co.*, 383 Ill. 569, 574, 50 N.E.2d 836, 840 (1943) ("To be final and appealable, a judgment must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment."); *Leopold v. Levin*, 45 Ill.2d 434, 446, 259 N.E.2d 250, 257 (1970) ("An interlocutory order may be modified or vacated at any time before final judgment.").

■ There is a split among the circuits as to whether an interlocutory order of a state court can be the basis for a denial of federal jurisdiction under the *Rooker–Feldman* doctrine. *Compare Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir.2000) (doctrine applicable to

interlocutory orders), *with Cruz v. Melecio,* 204 F.3d 14, 21 n. 5 (1st Cir.2000) (doctrine inapplicable to non-final orders). The Seventh Circuit has yet to determine the question. *See Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 702 n. 4 (7th Cir.1998). However, as the First Circuit noted in *Cruz,* applying *Rooker–Feldman* to an interlocutory judgment "would not follow from the jurisdictional statute that invigorated the *Rooker–Feldman* doctrine in the first place." 204 F.3d at 21 n. 5. Indeed, 28 U.S.C. § 1257, which gave rise to the *Rooker–Feldman* doctrine, simply limits appellate review of final judgments of state courts to the Supreme Court, and interlocutory orders do not implicate appellate review of any sort, since they are not subject to appeal, and have no binding effect on other courts. An Illinois trial court could quite properly consider matters involved in another Illinois court's interlocutory ruling—without engaging in appellate review that would be beyond its jurisdiction—since "[i]nterlocutory orders cannot form the basis for claims of either *res judicata* or collateral estoppel" under Illinois law. *Alliance Syndicate, Inc. v. Parsec, Inc.,* 318 Ill. App.3d 590, 602, 251 Ill.Dec. 861, 741 N.E.2d 1039, 1047 (1st Dist.2000). Similarly, a federal court is not engaged in the appellate review prohibited by *Rooker–Feldman* when it considers an issue dealt with by an interlocutory state court order. *See Davis v. Bayless,* 70 F.3d 367, 375–76 (5th Cir.1995) ("[O]ur Circuit has not allowed the Rooker–Feldman doctrine to bar an action in federal court when that same action would be allowed in the state court of the rendering state."); Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4469.1 at 147 ("It seems particularly questionable to bar federal-question jurisdiction [under the *Rooker–Feldman* doctrine] if the courts of other states, and indeed other courts of the same state, would have jurisdiction to entertain the same federal question.").

The circumstances of the present case vividly illustrate a practical reason for not applying the *Rooker–Feldman* doctrine to interlocutory orders—the federal question involved in an interlocutory order may not ultimately be reflected in the court's final order. Here, the position asserted by Benalcazar is that the automatic stay prevents continuation of the contempt motion that Brookfield filed against him in state court on December 14. The state court's interlocutory rejection of that position had the effect of imposing on Benalcazar the burden of defending the motion on the merits, which, as he sees it, the automatic stay prohibited. But in the event that the hearing took place and Benalcazar obtained a final judgment in his favor, there would be no ruling regarding the automatic stay from which he could appeal. And this possibility is far from merely academic: since the filing of this bankruptcy case, the state court has already held a hearing of the sanctions motion filed by Brookfield against Benalcazar on January 7, and denied the motion on the merits. Benalcazar obviously could not appeal that order, nor could he have preserved the issue of a stay violation for appeal in the state court system, since, as noted above, jurisdiction to impose sanctions for violation of the automatic stay is exclusively federal. Thus, far from preserving the jurisdiction of the state appellate process, applying the *Rooker–Feldman* doctrine to interlocutory orders might well deny a right to appeal in any forum.

 However, even if the *Rooker–Feldman* doctrine were applicable to interlocutory orders, there is a second, and more pervasive reason for denying application of the doctrine in the context of the present case: state court judgments en-

tered in violation of an automatic stay in bankruptcy are void ab initio and subject to collateral attack, even if the state court has (erroneously) determined that the automatic stay does not apply to the proceeding in which the order is entered. This is precisely the holding of *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370, (1940), the decision that, as discussed above, originated the rule of voidness for judgments entered in violation of a bankruptcy stay.

Ordinarily, of course, a court has jurisdiction to determine its own jurisdiction, and any error made in that determination is subject only to correction through direct review, not by collateral attack in a separate proceeding. The Supreme Court announced this rule in *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104 (1938), as applying in a situation where the determination of jurisdiction was made "on an actual contest over jurisdiction between the parties." And in *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940), the Court extended the rule against collateral attack to uphold even implicit jurisdictional determinations, made without the question being raised by the parties.

However, the *Kalb* decision recognized an exception to this general rule, and, given its importance to the issues here, the decision is worth reviewing in some detail. In 1933, the owners of a family farm (the Kalbs) were brought into state court on a mortgage foreclosure. By 1935, when the property was sold to the mortgagees at a foreclosure sale, the Kalbs had filed a bankruptcy case under the Frazier–Lemke Act. In 1936, the Kalbs were evicted. They did not appeal any of the judgments that led to this result. But thereafter, they brought two actions in the Wisconsin state court system collaterally attacking

their eviction: first, against the mortgagees, for restoration of possession; second, for damages against the mortgagees and the state officials who confirmed the foreclosure sale. Both cases were dismissed by the trial court and the dismissal was affirmed by the Wisconsin Supreme Court. On further appeal to the Supreme Court, there were two issues to be determined: "[1] whether the Wisconsin ... Court had jurisdiction, while the petition under the Frazier–Lemke Act was pending in the bankruptcy court, to confirm the sheriff's sale and order appellants dispossessed, and, [2] if it did not, whether its action in the absence of direct appeal is subject to collateral attack." 308 U.S. at 436, 60 S.Ct. at 345.

The Court answered the first question by reviewing the automatic stay provisions of the Frazier–Lemke Act, and concluded that these provisions "demonstrate[d] that Congress intended to, and did deprive the [State] Court of the power and jurisdiction to continue or maintain in any manner the foreclosure proceedings against appellants without the consent of the bankruptcy court in which the farmer's petition was then pending." 308 U.S. at 438, 60 S.Ct. at 346. On the second question—whether there could be a collateral attack on the order of a state court that lacked jurisdiction because of the automatic stay—the Court expressly found an exception to the general rule:

> Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to the principle that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law

protects nullities and vulnerable collaterally.

308 U.S. at 438–39, 60 S.Ct. at 346. In particular, the Supreme Court held that the extent to which the state court had considered or ruled on the question of its jurisdiction was irrelevant.

> Congress manifested its intention that the issue of jurisdiction in the foreclosing court need not be contested or even raised by the distressed farmer-debtor. [C]onsiderations as to whether the issue of jurisdiction was actually contested in the County Court [citing *Stoll v. Gottlieb*] or whether it could have been contested [citing *Chicot County Drainage District v. Baxter State Bank* ] are not applicable where the plenary power of Congress over bankruptcy has been exercised as in this Act.

308 U.S. at 444, 60 S.Ct. at 348. Accordingly, the Court remanded the Kalbs' cases to the Wisconsin courts with directions to determine appropriate remedies against the parties who had acted in violation of the automatic stay, despite the state court judgment authorizing their actions. 308 U.S. at 443, 60 S.Ct. at 347.

The automatic stay under § 362 of the Bankruptcy Code has both a broader sweep than the automatic stay under the Frazier–Lemke Act (extending to a wide array of collection activities against debtors generally, rather than simply to foreclosure actions against farmers) and it is subject to exceptions not contained in the Frazier–Lemke Act. However, the teaching of *Kalb v. Feuerstein* indicates that, where the stay of § 362 is applicable, it operates with the same effect on state court jurisdiction.

This result has substantial support in decisions of the federal courts of appeal. Although the Seventh Circuit has not had occasion to apply *Kalb* to an exercise of state court jurisdiction in violation of the automatic stay, it has recognized that *Kalb* establishes an exception to "the general rule of finality of jurisdictional determinations" arising from "the effect of the automatic stay in bankruptcy law." *United States v. Cook County,* 167 F.3d 381, 389 (7th Cir.1999). Similarly, the Sixth Circuit, in a case involving an administrative agency, has stated that "if the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court" so that, "[i]f the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio," with a bankruptcy court's ruling being "determinative" in the event of a dispute between the two courts. *Chao v. Hospital Staffing Services, Inc.,* 270 F.3d 374, 383–84 (6th Cir.2001).

More importantly, the only two circuits that have actually ruled on the question have followed *Kalb* in holding that a state court judgment in violation of the automatic stay is subject to collateral attack in bankruptcy court, with both circuits rejecting the application of the *Rooker–Feldman* doctrine in this context.

The Third Circuit's decision in *Raymark Industries, Inc. v. Lai,* 973 F.2d 1125 (3d Cir.1992), involved a state court judgment that was on appeal when the judgment debtor filed a bankruptcy case. The debtor, contending that the automatic stay applied to the appellate proceedings, asked the state appellate court to stay the appeal. It refused to do so, and dismissed the appeal for lack of diligent prosecution. The debtor then turned to the bankruptcy court, seeking a declaration that the order dismissing the appeal was void, on the ground that the order had been entered in violation of the automatic stay. The creditor responded that the judgment of the state appellate court on the applicability of

the automatic stay was binding on the bankruptcy court. The bankruptcy court held, on the merits, that the automatic stay did not apply, and was affirmed by the district court.

In reversing this decision, the Third Circuit was fully mindful of the Rooker–Feldman doctrine. One year before *Raymark*, the court had decided *James v. Draper (In re James)*, 940 F.2d 46, 51–53 (3d Cir. 1991), citing both *Rooker* and *Feldman* in the course of holding that a bankruptcy court lacked jurisdiction to determine whether a state court had properly applied its forfeiture law in allowing a seizure of property of the debtor. In *Raymark*, the court explained why these Supreme Court cases did not apply to prevent bankruptcy court review of a state court judgment rendered in violation of the automatic stay:

> Since the district court [in *James*] based its decision to vacate the state court judgment on its view that the state court erroneously decided the merits, and not because the state court lacked jurisdiction under the automatic stay, we held that the district court's decision must be reversed because "[s]uch federal collateral review of a state proceedings is inappropriate." [940 F.2d at 52.]

Here, the bankruptcy court had the power to vacate the decision of the [state appellate court] dismissing Raymark's appeal because actions taken in violation of the automatic stay are void *ab initio*. *See Kalb v. Feuerstein* . . . .

More recently, the Ninth Circuit, in *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081–82 (9th Cir. 2000) *(en banc)*, applied *Kalb* to allow consideration, in federal bankruptcy proceedings, of whether a state court criminal action to enforce a debtor's support obligations was a violation of the automatic stay. As in *Raymark*, the argument was made that, because the state court presid-

ing over the criminal case had ruled the stay inapplicable, the federal courts were without jurisdiction to rule on the matter under the *Rooker–Feldman* doctrine. And, as in *Raymark*, the Ninth Circuit rejected this argument, citing *Kalb* for the rule that "the *Rooker–Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy." 202 F.3d at 1083.

In the course of its opinion in *Gruntz*, the Ninth Circuit engaged in a discussion of bankruptcy jurisdiction that might be read to imply that state courts lack jurisdiction to consider any matter that is a "core" bankruptcy proceeding, and specifically to imply that state courts lack jurisdiction to consider whether the automatic stay applies to matters pending before them. *See, e.g.*, 202 F.3d at 1083 ("[N]othing [in the federal statute establishing bankruptcy jurisdiction] vest the *states* with any jurisdiction over a core bankruptcy proceeding, including motions to terminate, annul, or modify the automatic stay.") This implication has reasonably been criticized, *see Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 258 B.R. 554, 562 (Bankr.E.D.N.Y.2001); David B. Young, Automatic Stay Issues: Select Recent Developments, 804 PLI/Comm 899, 912 (April 2000). However, *Gruntz* is more appropriately read as a routine application of the rule of *Kalb v. Feuerstein*— that while a state court has jurisdiction to determine the applicability of the automatic stay in the first instance, its jurisdictional determination is subject to collateral attack. Read in this way, *Gruntz* makes an unexceptional point: an erroneous determination by a state court that the automatic stay does not apply has the effect of modifying the stay, which is uniformly understood to be beyond the state court's power.

Finally, contrary to the criticism of *Gruntz*, the rule of *Kalb v. Feuerstein* creates no undue difficulties for the relationship between state and federal courts. The impact of the rule was succinctly set forth by the Sixth Circuit in *Chao*, 270 F.3d at 384:

[W]hen a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings. *See In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir.1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court."). Assuming its jurisdiction is otherwise sound, the nonbankruptcy court may enter orders not inconsistent with the terms of the stay and any orders entered by the bankruptcy court respecting the stay.... If, for example, the suit before the district court may proceed because an exception to the automatic stay authorizes prosecution of the suit, the district court may enter needful orders not themselves inconsistent with the automatic stay. *See Commodity Futures Trading Commission v. Co Petro Mktg. Group, Inc.*, 700 F.2d 1279, 1283–84 (9th Cir.1983).

If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio. *See Schwartz v. United States*, 954 F.2d 569, 570–71 (9th Cir. 1992); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 940 (6th Cir. 1986). If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause. *See Raymark Indus. v. Lai*, 973 F.2d 1125, 1132 (3d Cir.1992).

This approach to application of the automatic stay is, in fact, the most workable. The alternative of granting binding effect to a nonbankruptcy court's ruling on the applicability of the automatic stay would be to force debtors (and trustees) to seek rulings from the bankruptcy court whenever post-bankruptcy action is threatened in another court proceeding, lest the other court make an unexpected ruling that the automatic stay does not apply to the proceeding. This approach would largely eliminate the "automatic" nature of the stay, and return bankruptcy to the pre–1930 era of individualized stay orders. Moreover, annulment of the stay, retroactively validating an erroneous exercise of jurisdiction by a state court, is available to deal with any bad faith by the debtor in the conduct of the litigation. *See Matthews v. Rosene*, 739 F.2d 249 (7th Cir. 1984).

In sum, the *Rooker–Feldman* doctrine does not prevent this court from considering the question of whether the automatic stay applies to the contempt proceedings brought by Brookfield against Benalcazar, both because the state court's order bearing on the matter was interlocutory, and because an erroneous decision by the state court as to the applicability of the automatic stay would result in an order void ab initio under *Kalb v. Feuerstein*.

### 2. The applicability of the automatic stay to Illinois civil contempt proceedings

█ But for the applicability of some exception, the automatic stay would plainly

prohibit Brookfield from pursuing its civil contempt motion against Benalcazar, since the stay applies to "the . . . continuation . . . of a judicial . . . proceeding against the debtor . . . that was . . . commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). Brookfield acknowledges this situation, and points to § 362(b)(4) of the Bankruptcy Code, the "police power" exception to the automatic stay, as allowing its contempt proceedings to go forward. Brookfield has not suggested that any other stay exception applies here.

Section 362(b)(4) excepts from the stay defined by § 362(a)(1) "the . . . continuation of an action or proceeding by a governmental unit or any organization [operating under a chemical weapons law] to enforce such governmental unit's or organization's police or regulatory power." From its plain language (since the chemical weapon aspect of the exception has no application here), § 362(b)(4) would apply to the present case only if two distinct elements were met—(1) Brookfield's contempt proceedings were brought "by a governmental unit" and (2) the proceedings were brought "to enforce . . . police or regulatory power" of that governmental unit. Neither of these elements has been established in this case.

The contempt proceedings here were initiated and pursued by Brookfield itself. Brookfield brought the December 21 motion for rule to show cause that gave rise to the contempt proceedings. *See In re Marriage of LaTour*, 241 Ill.App.3d 500, 508, 608 N.E.2d 1339, 1345 (4th Dist.1993) ("[T]he petition for a rule to show cause

initiates the contempt proceedings . . . ."). Brookfield also chose to litigate the matter before the state court, rather than seeking a continuance of the contempt proceedings pending resolution of Benalcazar's bankruptcy case. *See First Nat'l Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316, 1318 (9th Cir.1981) (a creditor may postpone a foreclosure sale after the debtor's bankruptcy filing without violating the automatic stay). Brookfield is not a "governmental unit," and so its contempt proceedings fail to satisfy the first element of the police power exception.[2] *See In re Westmoreland Coal Co.*, 213 B.R. 1, 16–17 (Bankr.D.Colo.1997), (holding that a union benefit plan, though created by a federal statute, was not a "governmental unit" whose judicial proceedings could be exempted from automatic stay by § 362(b)(4)).

Similarly, Brookfield's contempt proceedings were not brought to enforce any police or regulatory power. The scope of the "police power" intended to be advanced by § 362(b)(4) was delimited by the floor manager of the Bankruptcy Reform Act of 1978: "[S]ection [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety . . . ." 124 Cong. Rec. 32,395 (1978). Representative Edwards went on to emphasize that the exception would not apply to actions by a governmental unit to advance its own "pecuniary interest." *Id.* Reflecting this understanding of the exception, courts have distinguished between regulatory actions ad-

---

**2.** Section 101(27) of the Bankruptcy Code defines "governmental unit" in a manner consistent with the ordinary meaning of the term: "[G]overnmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the

United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government . . . .

vancing general governmental goals, on one hand, from collection actions intended to satisfy pecuniary claims on the other. *See, e.g., In re Corporacion de Servicios Medicos Hospitalarios de Fajardo,* 805 F.2d 440, 446–47 (1st Cir.1986) ("[W]e choose to follow the congressional directive to give section 362(b)(4) a 'narrow construction' ...."); *Island Club Marina, Ltd. v. Lee County, Fla.,* 32 B.R. 331, 336 (Bankr.N.D.Ill.1983).

Of course, any failure to obey a court order has the effect, to some extent, of disparaging the court, and so any contempt proceeding can be seen as enforcing a governmental interest in "vindicating the authority and dignity of the court." *People v. Redlich,* 402 Ill. 270, 277, 83 N.E.2d 736, 740–41 (1949). However, Illinois courts distinguish between two types of contempt involved in a failure to obey a court order:

> Criminal contempts include acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice, while civil contempts consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court.

*Id.,* 402 Ill. at 277, 83 N.E.2d at 740. Accordingly, contempt proceedings are also of two types. As the Illinois Supreme Court explained in *People v. Shukovsky,* 128 Ill.2d 210, 220, 131 Ill.Dec. 69, 538 N.E.2d 444, 447 (1988):

> There are civil and criminal proceedings. They have been simply defined by this court: "Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while * * * civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of oppos-

ing parties. [Citations]." *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill.2d 407, 409, 173 N.E.2d 417.

Brookfield's contempt proceedings against Benalcazar were civil in nature. The order ("rule") that Brookfield prepared for entry by the state court on March 14 expressly required Benalcazar to show cause why he "should not be held in civil contempt" and the principal relief that Brookfield was seeking in its December 14 motion was an order compelling Benalcazar to produce all "records in his possession" relating to the business of his sole proprietorship (Teddie Kossof) and the corporation that leased his business space (Salon & Spa). Beyond the issuance of a rule to show cause, Brookfield's only additional specific request for relief was an award of its attorneys' fees and costs in connection with all its efforts to enforce its citation to discover assets. But monetary awards are generally denied parties pursuing contempt proceedings in Illinois, precisely because they are viewed as private compensation rather than a punitive fine, which would be paid to the public treasury. *See Keuper v. Beechen, Dill & Sperling Builders, Inc.,* 301 Ill.App.3d 667, 669–70, 235 Ill.Dec. 342, 704 N.E.2d 915, 917 (2d Dist.1998) (discussing authorities).

The contempt proceedings, then, were part of Brookfield's effort to enforce its judgment against its Benalcazar and Salon & Spa, by discovering assets; they were not, as criminal contempt proceedings would have been, designed primarily to punish Benalcazar for showing disrespect to the court. Therefore, the proceedings do not satisfy the second element of § 362(b)(4).

Brookfield resists the conclusion that § 362(b)(4) does not apply here, relying primarily on *Alpern v. Lieb,* 11 F.3d 689 (7th Cir.1993). In *Alpern,* the Seventh Circuit applied the police power exception

to a proceeding brought by a private party under Rule 11 of the Federal Rules of Civil Procedure. The court's entire discussion of § 362(b)(4) is the following:

Rule 11 is not a simple fee-shifting provision, designed to reduce the net cost of litigation to the prevailing party. Compare 42 U.S.C. § 1988. It directs the imposition of sanctions for unprofessional conduct in litigation, and while the form of sanction is often and was here an order to pay attorney's fees to the opponent in the litigation, it is still a sanction, just as an order of restitution in a criminal case is a sanction even when it directs that payment be made to a private person rather than to the government. The Rule 11 sanction is meted out by a governmental unit, the court, though typically sought by a private individual or organization—a nongovernmental litigant, the opponent of the litigant to be sanctioned. There is no anomaly, given the long history of private enforcement of penal and regulatory law. The private enforcer, sometimes called a "private attorney general," can be viewed as an agent of the "governmental unit," the federal judiciary, that promulgated Rule 11 in order to punish unprofessional behavior. The fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4). *In re Commonwealth Cos.*, 913 F.2d 518, 522–23 (8th Cir.1990).

A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss.

11 F.3d at 690.

The impact of this discussion on the first element of § 362(b)(4) is difficult to deter-

mine, since it is not clear how a private litigant, pursuing Rule 11 sanctions, can be viewed as an agent of the federal courts. First, courts are not required to act through agents in enforcing Rule 11; paragraph (c)(1)(B) of the rule expressly allows courts to enforce the rule on their own initiative. *Cf. Berg v. Good Samaritan Hosp.*, 198 B.R. 557, 562 n. 10 (9th Cir. BAP 1996), *aff'd sub. nom. In re Berg*, 230 F.3d 1165 (9th Cir.2000) (applying § 362(b)(4) to sanction proceedings initiated by the 9th Circuit under Fed. R.App. P. 38, but noting that sua sponte action by the court made the case a stronger one for application of the exception than *Alpern*). Second, a private individual or organization pursuing Rule 11 sanctions cannot be an "agent" of the court according to the usual understanding of agency, since that understanding requires the agent to act at the direction of its principal. *See Restatement (Second) of Agency* § 1 (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control, and consent by the other so to act."), *id.*, comment b (an agency relationship requires "the understanding of the parties that the principal is to be in control of the undertaking"). And, of course, a court does not control the actions of parties bringing Rule 11 motions. Given the direction of the Supreme Court to construe the Bankruptcy Code according to its plain meaning, *see, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10, 120 S.Ct. 1942, 1949, 147 L.Ed.2d 1 (2000), the *Alpern* holding that privately initiated Rule 11 proceedings are within the scope of § 362(b)(4) may be subject to question.

However, regardless of the impact of *Alpern* on Rule 11 proceedings, it has no

application to the present case because of the second element of § 362(h). *Alpern* stresses that Rule 11 sanctions are always punitive, designed primarily to punish and deter the frivolous pleadings that are the subject of the rule. That goal can reasonably be seen as the pursuit of a regulatory governmental interest subject to the police power exception. Brookfield's civil contempt proceedings against Benalcazar, in contrast, were, as discussed above, primarily designed to compel Benalcazar to provide information that would assist Brookfield in collecting a judgment—a private pecuniary goal. *Alpern* cannot be read to except from the automatic stay private judgment enforcement efforts—such a reading would turn the "narrow construction" of the police power exception on its head.

The only other decision cited by Brookfield in support of the applicability of the police power exception is *In re Betts*, 165 B.R. 233 (Bankr.N.D.Ill.1994). There the court dealt with the situation of an oft-sanctioned Chapter 7 debtor who, after the filing of his bankruptcy case, was served with a citation to discover assets in a pending probate matter by the "appointed personal representative" of the decedent. 165 B.R. at 236. At the time, the personal representative had no knowledge of the bankruptcy filing. The debtor failed to appear, and the personal representative obtained a rule to show cause for contempt. More than a year later, after receiving a discharge in his Chapter 7 case, the debtor sought sanctions against the personal representative and others for vio-

lation of the automatic stay in connection with the probate proceedings. The bankruptcy court cited *Alpern* in finding that the police power exception of § 362(b)(4) applied, but the court did not discuss whether the personal representative, as an appointee of the probate court, could be seen as an agent of that court, nor did the bankruptcy court discuss whether civil or criminal contempt was involved in the rule to show cause issued in that case. Rather, the bankruptcy court's principal concern was comity—which the court found applied to allow the state court to proceed with estate administration. 165 B.R. at 242. *Betts*, then, offers little guidance on the different issues presented by the present case.

In sum, Brookfield, in pursuing civil contempt proceedings against Benalcazar, was a private litigant pursuing its individual interests in enforcing a court order to assist in collecting a judgment—not a governmental unit enforcing the governmental unit's police or regulatory power. Accordingly, the police power exception of § 362(b)(4) does not apply, and Brookfield's actions were subject to the automatic stay.

*3. The willfulness of Brookfield's actions in violation of the stay; the extent of damages*

 Brookfield argues that, even if it did violate the automatic stay by pursuing civil contempt proceedings against Benalcazar, it did not do so willfully, and so should not be liable for damages under § 362(h) of the Code.[3] Brookfield's argu-

**3.** Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." As Brookfield appears to recognize, if a willful violation of the automatic stay is found, this language requires the

court to award whatever actual damages are established. *See Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876 (9th Cir. BAP 1998) ("[T]he words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon finding a willful violation of the stay.")

ment is that because it honestly believed that the automatic stay was not applicable to its contempt proceedings, any violation of the stay could not be willful. However, Brookfield acknowledges that it pursued the contempt proceedings after it knew of the filing of Benalcazar's bankruptcy case, and such a deliberate action, taken with knowledge of the facts giving rise to the automatic stay, is sufficient to establish a willful violation of the stay under § 362(h)—a debtor need not show that the creditor was subjectively aware of the applicable law or intended to violate it.

In *Price v. United States,* 42 F.3d 1068, 1071 (7th Cir.1994), the Seventh Circuit found the IRS liable for continuing a collection proceeding initiated by a computer error, after it had been informed of a prior bankruptcy filing, and found that the intent of the IRS to violate the automatic stay was irrelevant, since "[a] 'willful violation' does not require a specific intent to violate the automatic stay." *Price* was decided after a thorough treatment of the issue of "willfulness" in *Taborski v. U.S., IRS,* 141 B.R. 959, 965–67 (N.D.Ill.1992), which concluded that, under § 362(h) "[w]hether the party believes in good faith that it had a right to [pursue its nonbankruptcy remedies] is not relevant to whether the act was 'willful' or whether compensation must be awarded." This reading reflects the substantial majority of decisions, including all circuit court decisions on the question. *See* G. Harvey Boswell & Abigail Gerlach, *Coming And Going: The Revolving Jurisdictional Door Of The Bankruptcy Court,* 28 U. Mem. L.Rev. 885, 902 n. 73 (1998) (collecting authorities). Accordingly, Brookfield is liable to Benalcazar for his actual damages, including attorneys' fees and costs, caused by Brookfield's violation of the automatic stay.

■ Attorneys' fees and costs are, in fact, the only actual damages asserted by Benalcazar, and he has submitted an itemization of such damages totaling over $8,000. However, much of this work had to do with matters that would have been required regardless of Brookfield's pursuit of the state court contempt proceedings. The parties had a genuine dispute over the applicability of the police power exception to the automatic stay, and that dispute would have required the expenditure of legal services by Benalcazar's counsel even if Brookfield had raised the question by a motion in bankruptcy court instead of pursuing the state court contempt proceedings. Thus, Benalcazar's request for reimbursement for legal research regarding the police power exception is plainly not an element of damages caused by Brookfield's contempt prosecution. Similarly, legal fees in connection with an examination of Benalcazar pursuant to Fed. R. Bankr.P. 2004 would have been necessary regardless of the state court proceedings. In the end, the only entries on the itemization submitted by Benalcazar that reflect damages actually caused by Brookfield's stay violation are (1) preparation of Benalcazar's motion to enforce the automatic stay (entry of March 19, 2002); (2) research and drafting of memoranda dealing with the *Rooker–Feldman* jurisdictional issues raised by the state court's order (entries of April 8–12, 2002); (3) the preparation of Benalcazar's damage itemization and supporting memorandum (entry of June 5, 2002); and (4) costs for computer research in connection with the *Rooker–Feldman* and fee memoranda (on April 8 and June 5, 2002). The total of these fees and costs is $3,354.05; actual damages will be assessed in that amount.[4]

4. Benalcazar might also assert that fees in connection with a reply memorandum in sup-

■ On the other hand, the circumstances of this case do not justify any award of punitive damages. The Second Circuit set out guidelines for the award of damages under § 362(h) as follows:

[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h). This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

*In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1105 (2d Cir.1990).

Brookfield's actions in pursuing its state court contempt proceedings, although a violation of the automatic stay, were not taken in bad faith or with malice toward Benalcazar. Brookfield had a colorable legal argument in support of the applicability of the police power exception to the automatic stay, and, after Benalcazar challenged its action in proceeding in state court, Brookfield promptly both sought a ruling on the matter in this court and refrained from further action in state court. Reimbursing Benalcazar for his additional expenses, caused by the stay violation, is sufficient to accomplish the purposes of § 362(h).

### 4. Relief from the automatic stay

■ The final issue to be determined here is Brookfield's request for relief from the automatic stay. As noted above, in a situation where the automatic stay applies, § 362(d) of the Bankruptcy Code allows the bankruptcy court to grant relief to a creditor, "such as by terminating, annulling, modifying, or conditioning such stay." Brookfield has asked, in effect, for annulment of the automatic stay, allowing the state court proceedings to continue "nunc pro tunc." As discussed above, such retroactive relief is available, in appropriate circumstances, under § 362(d). *See Matthews v. Rosene,* 739 F.2d 249 (7th Cir. 1984). However, the circumstances of this case do not establish grounds for stay relief.

Most requests for relief from the automatic stay are made by creditors with a security interest in property of a bankruptcy estate, and the relief requested is ordinarily a "lifting" of the stay to permit the creditor to pursue nonbankruptcy remedies—such as repossession or foreclosure—against the property. In this situation, § 362(d) provides the creditor with express grounds for relief from the stay, such as a lack of adequate protection for the creditor's interest in the estate property. *See, e.g., In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1231–34 (7th Cir.1990) (noting the limited scope of a hearing to determine whether relief from stay should be granted to a creditor with a lien on the property of the estate).

■ Brookfield's request is of a different sort. Here, the question is whether relief from the stay should be granted under the general ground of "cause," to allow a proceeding in another court—involving the debtor personally rather than property of the estate—to continue during the time that the bankruptcy case is pending. Here, there are no statutory guidelines. Rather, "[b]ecause there is no clear definition of what constitutes 'cause,' dis-

port of his damage itemization should be counted as part of his damages; however, since the reply memorandum added little to the arguments made originally by Benalcazar, an additional award of fees for its preparation would not be appropriate.

cretionary relief from the stay must be determined on a case by case basis." *In re MacDonald,* 755 F.2d 715, 717 (9th Cir. 1985); *accord Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship),* 30 F.3d 734, 737 (6th Cir.1994); *Pursifull v. Eakin,* 814 F.2d 1501, 1504 (10th Cir.1987); *cf. In re Holtkamp,* 669 F.2d 505, 507 (7th Cir.1982) ("[T]he statute commits the decision of whether to lift the stay to the discretion of the bankruptcy judge . . . .").

Several factors indicate that relief from the automatic stay should not be accorded here. First, Benalcazar specifically requested Brookfield's counsel not to proceed with its March 14 state court hearing, and brought the matter promptly before this court. His conduct here does not require retroactive relief under the equitable standard set out in *Matthews v. Rosene,* 739 F.2d 249 (7th Cir.1984).

Second, although Brookfield argues that its state court contempt proceedings were only directed toward obtaining documents of Salon & Spa, a nondebtor, its December 14 motion plainly sought production of all documents in Benalcazar's possession relevant to Brookfield's collection activity, specifically including documents of Teddie Kossof, Benalcazar's proprietorship. Benalcazar's personal financial records (including those of Teddie Kossof) are property of his bankruptcy estate under § 541(a) of the Bankruptcy Code and are more properly examined in this bankruptcy case, by the trustee, for the benefit of all creditors, rather than in a state court citation proceeding, for the benefit only of Brookfield. Moreover, even Salon & Spa's documents may be relevant to the bankruptcy case, given Benalcazar's apparent status as that corporation's principal shareholder. Thus, the automatic stay

should remain in effect, delaying any state court action to enforce production of Benalcazar's documents, until this bankruptcy case has concluded.

Third, to the extent that Brookfield has a right to be compensated for its attorneys' fees and costs in pursuing its citation proceedings against Benalcazar, that right is a "claim" in this bankruptcy case.[5] Such a claim is discharged in an individual's Chapter 7 case, under § 727 of the Code, unless discharge is denied by the court under § 727(a) or the claim falls within an exception to discharge under § 523(a). The only exceptions to discharge that would appear potentially applicable to Brookfield's claim for attorneys' fees and costs are those of § 523(a)(2) (dealing with false representations) and (a)(6) (dealing with willful and malicious injury). However, pursuant to § 523(c), only the bankruptcy court can grant exceptions to discharge on these grounds, and Brookfield did not assert these grounds within the time required by Fed. R. Bankr.P. 4007(b). On the other hand, Brookfield has filed a complaint objecting to Benalcazar's discharge under § 707(a). If that complaint succeeds, Brookfield (and all other creditors) will be able to pursue their claims against Benalcazar after this case concludes, but if it does not succeed, Brookfield's claim for fees against Benalcazar will be discharged. Accordingly, again, the automatic stay should remain in effect, pending the resolution of Brookfield's objection to discharge.

Finally, Brookfield suggests, in the prayer for relief that concludes its motion, that stay relief is necessary to "confirm" the validity of the state court's order dismissing Brookfield's January 7 motion for sanctions. This argument is disingenuous. If Brookfield considers itself bound by the

---

**5.** Section 101(5) of the Bankruptcy Code defines "claim" to mean any "right to payment" and any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."

order dismissing its January 7 motion—which its request for "confirmation" would suggest—it needs no relief from the automatic stay to treat the matters raised by its motion as conclusively adjudicated. On the other hand, if Brookfield considers the matters raised in the January 7 motion still open (because the state court lacked jurisdiction to rule on them), it has not made that assertion, or given Benalcazar any opportunity to address the question. Accordingly, the issue is not appropriate for ruling at this time, and again, relief from stay is not appropriate.

### Conclusion

For the reasons stated above, (1) Benalcazar's motion seeking to enforce the automatic stay is granted, but only to the extent of awarding damages in the amount of $3,354.05, and (2) Brookfield's motion seeking relief from the stay or a determination of its inapplicability is denied. A separate order will be entered accordingly.